312 F.2d 177
 L. SKALNEY BASKET COMPANY, Fehr Bros. Manufacturers, Inc., The Otto Gerdau Company, Grand Basket Company, R. Greenspan & Co., Inc., J. Gerber & Co., Inc. and United Basket Company, Inc., Libellants-Appellees,
v.
S.S. RADNIK, her engines, etc., and Jugoslavenska Linjska Plovidba, Respondent-Appellant.
 No. 39.
 Docket 27465.
 United States Court of Appeals Second Circuit.
 Argued December 10, 1962.
 Decided January 2, 1963.
 
 F. Herbert Prem, New York City (Bigham, Englar, Jones & Houston, New York City, on the brief), for libellants-appellees.
 Lawrence J. Mahoney, New York City (Dougherty, Ryan, Mahoney & Pellegrino, New York City, on the brief), for respondent-appellant.
 Before MEDINA, WATERMAN and SMITH, Circuit Judges.
 MEDINA, Circuit Judge.
 
 
 1
 In this proceeding in admiralty to recover for cargo damage against the vessel and her owner, the answer of the shipowner has been stricken for failure to produce certain documents as required by a discovery order. The interlocutory decree striking the answer contains the customary reference to a Special Commissioner to ascertain the amount of the damages sustained by the owners of the cargo. From this interlocutory decree the shipowner appeals. Our jurisdiction is based on 28 U.S.C. § 1292(a) (3). Isthmian Steamship Co. v. California Spray-Chemical Corp., 9 Cir., 1961, 290 F.2d 486, 487, modified on other grounds, 9 Cir., 1962, 300 F.2d 41. The opinion below is reported at 1962 Am.Mar.Cas. 493.
 
 
 2
 The cargo was loaded aboard appellant's vessel SS "Radnik," in June of 1957 at Rijeka, Yugoslavia, her home port on the Adriatic. Appellant has no office or offices in the United States. The cargo was found damaged in the alleged amount of $26,950.00 at outturn at the Port of New York on July 9, 1957. Appellant's answer alleged that the loss occurred through fire, and this, if true, would establish a complete defense under the Fire Statute, 46 U.S.C. § 182, in the absence of proof that such fire was "caused by the design or neglect" of the shipowner.
 
 
 3
 As the cargo owners had no representative aboard the "Radnik" at the time of the fire, after the discovery of the loss an attempt was made to secure from the shipowner copies of the various documents and records relating to the fire, and particularly to the cause of the fire and conditions aboard the "Radnik" that made it possible for the fire to start, and made it difficult or impossible to extinguish the fire before it had caused such extensive damage to the cargo.
 
 
 4
 Thus, prior to the filing of the libel, counsel for the cargo owners communicated with the New York agents of appellant's underwriters and with its General Average adjusters in New York, in an attempt to secure the various documents and records relevant to the issues. In September, 1959 the New York agents reported that the "ship's records" had been received and would be made available for inspection. No records, however, had yet been made available when, on March 14, 1960, the libel was filed or on August 10, 1960, when the answer containing the affirmative defense of the Fire Statute was filed.
 
 
 5
 After repeated further demands, on March 23, 1961 appellant's counsel produced: a survey report of cargo damage, dated July 24, 1957, based upon inspection of the vessel at New York; a copy of the stowage plan; and extracts from the engine, deck and port logbooks describing measures taken to fight the fire "which broke out in No. 3 hold." But none of these documents gave any indication whatever of the circumstances surrounding and explaining the origin of the fire.
 
 
 6
 After a motion by the cargo owners for discovery under Supreme Court Admiralty Rule 32, 28 U.S.C. at pp. 100-101, Judge Cashin, on April 25, 1961, entered an order, consented to by appellant, requiring appellant to produce for inspection, within 90 days, the following items:
 
 
 7
 "1. The vessel's rough and smooth deck and engineroom log books.
 
 
 8
 "2. A list of the cargo stowed in #3 hold on the voyage described in the libel.
 
 
 9
 "3. All letters, cablegrams, reports, memoranda, statements or other communications made by the master of the SS. Radnik, the Chief Officer, Chief Engineer, or shore representatives of respondent concerning the cause of the fire which broke out on board the said vessel at Trieste on or about June 15, 1957.
 
 
 10
 "4. Original or true copy of Protest and Extended Protest made by the Master of the SS. Radnik in connection with the fire which broke out on board the said vessel at Trieste on or about June 15, 1957.
 
 
 11
 "5. Original or true copies of all letters, cablegrams, reports, statements and memoranda made by or on behalf of respondent concerning the cause of said fire.
 
 
 12
 "6. All survey reports and correspondence in connection therewith relating to any and all investigations made by or on behalf of respondent, its agents and employees, concerning the cause of the fire which broke out on board the said SS. Radnik at Trieste on or about June 15, 1957, and, particularly, (a) reports prepared by Lloyd's Register of Shipping, (b) Underwriters DOZ, and (c) the Port Security Officers at Trieste."
 
 
 13
 Parenthetically, it may be noted that the part of Judge Cashin's opinion that describes the place at which the fire occurred as Trieste, Free Territory of Trieste, and not the vessel's home port of Rijeka, Yugoslavia, is based upon the wording of the order of April 25, 1961, to the entry of which appellant consented. This is apparently an error, but it does not we think affect the validity or correctness of the order striking the answer.
 
 
 14
 On June 12, 1961 appellant's counsel produced: two Lloyd's survey reports describing ship damage on inspection at Rijeka on June 17, 1957 and December 14, 1958; two local government reports describing cargo damage on inspection at Rijeka and dated June 18, 1957 and August 4, 1957; and the ship's manifest listing the cargo carried aboard. None of these documents gave any inkling of the circumstances surrounding the origin of the fire nor did any of them give any explanation of how the fire started. Even as late as July 27, 1961 counsel for appellant advised that they were "continuing in our efforts" to obtain the documents described in Items 3 through 6, and promised to "comply with Judge Cashin's order as soon as possible." Upon an affidavit of the same counsel to the effect that he had received assurances from appellant's agents and underwriters that "complete records will be provided," Judge Cashin extended the time to comply with his order of April 25, 1961 until October 30, 1961, and he stated that in default of compliance by that date appellant's answer would "be stricken and an interlocutory decree entered."
 
 
 15
 The only result of this further extension of time was the production of: a Master's Protest, dated June 15, 1957, noting steps taken to fight "the fire which broke out suddenly yesterday"; a statement of the Master to appellant, dated June 14, 1957, containing precisely the same information; and an order of "Acquittance" by the District Attorney of Rijeka, dated October 4, 1957, to the effect that he found no grounds for prosecuting the members of the crew of the "Radnik". Additional log extracts contained nothing that had not appeared in the ones previously submitted. Again, none of the documents shed any light on the subject of how the fire started.
 
 
 16
 Finally, on October 30, 1961, the last day for compliance with the last order of Judge Cashin fixing the deadline, appellant delivered to counsel for the cargo owners, apparently as a substitute for the documents it had been ordered to produce and had promised to produce, a self-serving statement by the Master of the "Radnik", recently prepared and dated October 21, 1961, over four years after the fire aboard the "Radnik", stating that "it is impossible to say just how the fire started." The Master goes on to explain by way of an expression of opinion, "the vessel was in perfect condition before the fire and before loading was effected," and the electric and other installations were "in perfect order." We find it not necessary to describe the discussions and arguments of counsel that followed the receipt of the Master's statement of October 21, 1961, and preceded the filing of the order appealed from.
 
 
 17
 Disregarding, for the sake of argument, the reports and statements of the Master that are the subject matter of Item 3 of the order of April 25, 1961, there is a manifest failure to produce "all letters, cablegrams, reports, statements and memoranda made by or on behalf of respondent [shipowner] concerning the cause of the fire," as specified in Item 5. It is not surprising that Judge Cashin did not credit belated statements, none of which were made by accredited officials of the shipowner with personal knowledge of the facts, to the effect that no such documents were in existence. Indeed, the succession of promises, production of irrelevant documents, then more promises and so on gives a very clear indication that there is something fishy about the so-called explanations furnished by appellant. For example, much is made of the fact that counsel for appellant averred he had personally searched the New York files of various of the representatives of the shipowner and found no such documents as the shipowner had been directed to produce. Conspicuously absent from the record, however, are any similar averments by agents or officers of appellant in a position to examine appellant's own files in Yugoslavia, where it is likely such documents would be stored. Cf. Jensen v. Boston Ins. Co., N.D.Calif., 1957, 20 F.R.D. 619, 621-622, reversed on other grounds, 9 Cir., 1958, 259 F.2d 482. Moreover, political difficulties supposed to be inherent in appellant's Yugoslavic nationality, much relied upon by counsel for appellant on this appeal, only serve to some extent to account for a reasonable amount of delay in the transmission of the documents to the United States. There is no explanation for the promises to produce and the subsequent repudiation of these promises.
 
 
 18
 It is plain that Judge Cashin did not credit the representations finally made by appellant to the effect that there were no such documents as had been described in Item 5 of the order of April 25, 1961, and that he thought the failure to produce was, under the circumstances of this case, wilful. We agree with these conclusions and hold there was no abuse of discretion in striking appellant's answer. Certainly we cannot say that the court ruled improperly against the background of silence, promises, delays, the production of miscellaneous documents conveniently useless to the cargo owners, the questionable and belated "Master's Report," and the ultimate repudiation of appellant's prior representations.
 
 
 19
 We may note in passing that the default here was by the party itself and is not to be blamed in whole or in part on counsel. Cf. Link v. Wabash R. R. Co., 1962, 370 U.S. 626, 633-634, 82 S.Ct. 1386, 8 L.Ed.2d 734. We referred to a similar state of affairs when we recently affirmed an order dismissing a case for failure to prosecute, under Rule 41(b) of the Federal Rules of Civil Procedure, for "failure to obey repeated orders of the Court, for which plaintiffs themselves are largely responsible," in Demeulenaere et al. v. Rockwell Manufacturing Company et al., 2 Cir., 312 F.2d 209. See also Joseph v. Norton Company, 2 Cir., 1959, 273 F.2d 65, and Ohliger v. United States, 2 Cir., 1962, 308 F.2d 667.
 
 
 20
 Affirmed.