**Edward DAVIS, Plaintiff-Appellant,**

v.

**UNITED FRUIT COMPANY, Defendant-Respondent.**

**No. 98, Docket 32347.**

United States Court of Appeals
Second Circuit.

Argued Oct. 3, 1968.

Decided Oct. 3, 1968.

Certiorari Denied Feb. 24, 1969.

See 89 S.Ct. 869.

Thomas E. P. McElligott, New York City (Fields, Rosen, McElligott & Aus-

lander, New York City, of counsel), for plaintiff-appellant.

Thomas H. Walker, New York City (Burlingham, Underwood, Wright, White & Lord, by William M. Kimball, New York City, of counsel), for defendant-appellee.

Before LUMBARD, Chief Judge, and KAUFMAN and HAYS, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Although the decision below was affirmed in open court, we are of the view that it is appropriate for us to give our reasons for the affirmance in some detail. This appeal illustrates the difficulties which district court judges encounter in seeking to cope with calendar congestion and at the same time to administer justice with reasonable efficiency. Edward Davis appeals from a judgment for the defendant after a jury trial in his action for personal injuries incurred aboard a ship owned by United Fruit Company, arising from negligence or unseaworthiness. He claims that Judge MacMahon abused his discretion in refusing to grant a continuance of the action until Davis' ship returned from its voyage.

On December 23, 1964, Davis, a seaman on board the S.S. Morazan, owned by United Fruit Company, slipped on a "50¢ piece size spot of grease," injuring a finger. After treatment by the Public Health Service, Davis was found fit for duty by the following February 15. By May 26, 1965, he retained Mr. McElligott as his counsel, and commenced the present action. The defendant on June 29, 1965, took Davis' deposition. On July 8, 1966, Mr. McElligott filed note of issue and at that time certified that the case

was "in all respects ready for trial." After a pretrial conference on August 28, 1967, the case first appeared on the "Ready Waiting List" in the New York Law Journal of January 12, 1968. The case continued to appear daily on that list until March 4, 1968, when it first appeared on the published "Ready Day Calendar." Thus, from January 12, 1968 until March 20, Davis' case was listed daily in the New York Law Journal first on the "Ready Waiting List," and then on the "Ready Day Calendar."

In the meantime, Mr. McElligott, on March 7, sent a letter to Davis noting that the trial was coming up soon and advising Davis to contact his office promptly. From the record before us, it would appear that this was the only effort counsel made to find Davis before the trial. On March 18, Mr. McElligott was given 24-hour telephonic notice [1] that the case was being assigned to Judge MacMahon's part for trial, and on March 20 he was finally notified that the trial would actually commence the following day. When the case was called on March 21, counsel advised Judge MacMahon that Davis was at sea. He asked that the case be continued until March 26, at which time, he said, Davis' ship would be in port. When questioned by the court, counsel admitted that he was not sure whether or not Davis was in fact at sea.[2] Although the defendant did not object to a continuance, the court denied counsel's request on the ground that it was faced with a heavy calendar and that cases reached for trial must be ready to proceed. See S.D.N.Y.Cal. Rule 6(d), 7(b) and (c).

It is important to note that we are not dealing with a case which had been dismissed without affording the litigant a decision on the merits.[3] Here, counsel

1. Pursuant to S.D.N.Y.Cal.Rule 6(D) which requires that the case "must be ready to proceed to trial" when the notice is given. See also Rule 7(b) (1).

2. Several days before March 21, counsel for Davis evidently advised Judge MacMahon's law clerk that Davis would not return from sea until the 26th. Presumably this was based on a phone call from

Mrs. Davis to counsel in response to McElligott's letter of March 7. It is unclear exactly when this was communicated to Judge MacMahon's chambers but, clearly, this is not the method provided by the Court rules for requesting a continuance.

3. Even in situations where the district courts have dismissed cases because of de-

proceeded to trial and made use of Davis' deposition taken by the defendant. It was read to the jury, and the ship's records, injury report and medical log were also available to Davis' counsel to support his claim. Basically, therefore, appellant's claim is that his case was not presented "in its best light" because of the court's refusal to grant a continuance until Davis could make a personal appearance at his trial.

The authority to decide whether a continuance should be granted is entrusted to the sound discretion of the trial judge. Before we will upset his ruling, it must be established that he acted arbitrarily. United States v. Ellenbogen, 365 F.2d 982 (2d Cir. 1966). We believe that, in this case, there were sound grounds to deny the continuance. Mr. McElligott knew that his client was an itinerant seaman. It was clearly foreseeable to any lawyer engaged in trial practice that, with the unpredictable movement and acceleration of calendars, Davis might be at sea when the case was called for trial. In the 3½ years between the accident and the trial, and, surely, in the 2½ months during which the case was listed daily in the Law Journal, counsel could have prepared for this contingency. He should either have taken

Davis' deposition in order to have his testimony ready in the event his client was not available for the trial, Fed.R. Civ.P. 26 and 27, or have used the occasion of the defendant's examination of Davis to ask questions helpful to his client's cause. Moreover, the record does not show that counsel exerted any effort to follow Davis' movements or took any other steps to prepare his case for trial during the long interim.

The failure to be ready for trial when called—unfortunately, a condition too prevalent in our courts [4]—is one of the basic causes creating a backlog of calendars.[5] The ensuing delay caused by adjournments and other dilatory tactics, not only hobbles justice but causes the public to mistrust the entire judicial process. Chief Justice Warren, in discussing calendar delays, recently postulated:

> "[T]he litigants usually do not know that the lawyers are the cause of delay and therefore blame the courts rather than their counsel for the delay * * [T]he very process of delay, whether caused by court congestion or lawyer procrastination, reduces the chance that truth will be found at the trial since the memory of witnesses invariably diminishes with time as does their availability." Address by Chief

---

laying tactics and without reaching the merits, we have not found this action to be an abuse of discretion. See Schwarz v. United States, 384 F.2d 833 (2d Cir. 1967); Interstate Cigar Co. v. Consolidated Cigar Co., 317 F.2d 744, 745 (2d Cir. 1963); Demeulenaere v. Rockwell Mfg. Co., 312 F.2d 209 (2d Cir. 1962), cert. denied, 374 U.S. 813, 83 S.Ct. 1704, 10 L.Ed.2d 1036 (stressing the need to keep dockets current); Skalney Basket Co. v. S. S. Radnik, 312 F.2d 177 (2d Cir. 1963); Life Music v. Edelstein, 309 F.2d 242 (2d Cir. 1962) (pre-trial order); Ohliger v. United States, 308 F.2d 667 (2d Cir. 1962) (failure to prosecute); Newton v. United States, 308 F.2d 668 (2d Cir. 1962); Scott v. Spanjer Bros., 298 F. 2d 928 (2d Cir. 1962); Bardin v. Mondon, 298 F.2d 235 (2d Cir. 1961).

4. As we noted in Bardin v. Mondon, 298 F.2d 235, 237 n. 5 (2d Cir. 1961), one of the principal reasons cases are not ready

for trial is the failure of some counsel to prepare fully their cases until the last minute.

5. In the 1968 fiscal year, 5,335 new cases were commenced in just the Southern District of New York. That district had 11,247 cases pending at the end of the year and the largest number of pending civil cases of any federal court. Over 300 more actions were brought in fiscal 1968 than were disposed of in the same period, so the waiting list grows ever longer. Administrative Office of the United States Courts, Annual Report of the Director: 1968 at II–40, 41. The instant case was a jury action, and a suit involving a jury trial in the Southern District takes a median time of three years from the time issue is joined until the trial. This is the longest median time interval with the exception of the Eastern District of Pennsylvania, which is forty months. Id. at II–21.

Justice Warren, American Law Institute, May 21, 1968, at 5.

The courts must take the initiative in making their procedures more efficient,[6] and the bar must be prepared to co-operate in that effort if the judicial process is to maintain its vitality. The district courts of this Circuit have worked out precise and elaborate methods to notify attorneys of the progress of their cases on the calendars primarily so that counsel can gather in their witnesses and be ready to proceed to trial on schedule.[7] The bar must have equally precise procedures for preparing cases and ensuring that witnesses will be available at trial. And, we know from long experience that if counsel fails to proceed when his case is called for trial in regular turn, the court, having set aside time in expectation of that trial, may forfeit precious hours or days until another case can be readied. Other parties and counsel may be inconvenienced, and jurors may be forced to wait idly.[8] Had Judge MacMahon granted this continuance, not only would valuable trial time have been lost but cases scheduled for trial after this one would have been dislocated at the last moment from their regular order and forced to trial out of turn. Bardin v. Mondon, 298 F.2d 235 (2d Cir. 1961). Ergo, disarrangement breeds disarrangement.

Davis suggests that as a seaman he is a ward of the court entitled to special favor. This argument, when urged as a ground for continuance, has been reject-ed by other jurisdictions. Kenney v. California Tanker Co., 381 F.2d 775, 777 (3d Cir. 1967). It is particularly inapposite in the Southern District which handles far more seamen's suits than any other district court in the United States. Kaufman, Decongestion Through Calendar Controls, 328 Annals of the American Academy of Political and Social Science 84, 85 (1960).

Finally, we turn to the possible objection that we are penalizing Davis for the shortcomings of his lawyer. The short answer is that, since Davis chose his attorney voluntarily, he cannot be permitted to avoid the acts or omissions of his freely selected counsel. Any other notion would be inconsistent with our system of representative litigation. Link v. Wabash R.R. Co., 370 U.S. 626, 633–634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Nasser v. Isthmian Lines, 331 F.2d 124 (2d Cir. 1964).

We realize that a court must not let its zeal for a tidy calendar overcome its duty to do justice. Nor do we suggest that it is always proper to proceed on the basis of a deposition in the absence of a party. Nonetheless, the fact remains that the calendars of the Southern District court are clogged and justice is being delayed or perhaps impaired as a result. In order to reduce this choking congestion, the district courts must be permitted to exercise their discretion in appropriate ways that will ensure justice to all who seek it.[9] We will not interfere

---

6. The Chief Justice also stated, "I want to center on the conditions which exist in the federal court system: conditions which are presently bad and which are ominous for the future. I hope that I may be able to enlist your aid and the aid of our entire legal profession in the serious work which is needed to meet the congestion wh'ch faces the federal courts. The situation is critical. The backlog has, in fact, again grown during the past twelve months, in spite of the additional judges who have been appointed in recent years." Address by Chief Justice Warren, American Law Institute, May 21, 1968, at 1.

7. And not a day passes that the New York Law Journal does not include a summary of the calendar rules in bold-face type which reads in part, "Responsibility for the appearance of attorneys, parties and witnesses in court in readiness for trial is on the attorney of record * * *"

8. Under the Jury Selection and Service Act of 1968, Pub.L. 90–274 (March 27, 1968) which becomes effective December 22, 1968, each juror will be paid $20 a day and 10¢ per mile for travel. There may also be a subsistence allowance of $16 per day.

9. Chief Justice Warren further commented "The civil dockets of the federal courts,

with the conscientious judge who will not accept the status quo of calendar congestion. The task of updating calendars is arduous, complicated and burdensome. Since the trial judge must be entrusted with the power to alleviate calendar congestion, we shall not put obstacles in his way when he exercises his judgment wisely in achieving the desired goal.

Accordingly, we hold that the denial of a continuance here was not an abuse of the court's discretion. Affirmed.

like the criminal dockets, are falling behind, and though the delays there do not, in most cases, represent the life and liberty of the parties, they often represent suffering and financial loss which a humane society should not tolerate." Address by Chief Justice Warren, American Law Institute, May 21, 1968 at 3.