Richard A. PETERSON, Appellant,

v.

TERM TAXI INC. (sued herein as Terminal Taxi Inc.), John Diaz and Miriam Hayes, Appellees.

No. 591, Docket 33352.

United States Court of Appeals, Second Circuit.

Submitted March 17, 1970.

Decided June 4, 1970.

David B. Ampel, New York City (Ronald S. Goldfarb and Arthur Greenberg, New York City, on the brief), for appellant.

Nathan Cyperstein, New York City, for appellees, Term Taxi and John Diaz.

Julius Diamond, New York City (Joseph M. Costello, New York City, of counsel), for appellee, Miriam Hayes.

Before MOORE and FEINBERG, Circuit Judges, and BONSAL,* District Judge.

PER CURIAM:

This action was brought by Richard Peterson for damages arising out of personal injuries he allegedly sustained from a collision involving a taxicab owned by Term Taxi, Inc., in which he was a passenger, and an automobile driven by the defendant Miriam Hayes. Defendant John Diaz was the operator of the taxi in which Peterson was riding. The collision occurred on January 12, 1965. Peterson commenced his action on October 19, 1965, and one year later it was placed on the trial calendar.

The case appeared on the Ready Calendar in late January, 1968, and was subsequently assigned to Judge MacMahon for trial along with 24 other cases on May 20, 1968. Commencing May 28, 1968, it appeared in the New York Law Journal as No. 15, accompanied by a notice that the cases would be tried, one to follow the other in the order listed.

* Of the Southern District of New York, sitting by designation.

On June 3, 1968, the deputy clerk of the district court telephoned counsel for all of the parties to this action and alerted them to be ready for trial at any time. Counsel appeared on June 6th to discuss a possible settlement, but the conference was to no avail. The deputy clerk thereafter telephoned counsel on June 11th, notifying them that the case would probably be reached for trial on June 12th or shortly thereafter. On the date of the settlement conference, plaintiff's counsel submitted to the court his trial memorandum and requests to charge.

The deputy clerk telephoned counsel for all parties on Friday, June 14th, to inform them that the case would definitely come on for trial at 10:00 a. m. on Monday morning, June 17th. By affidavit, plaintiff's attorney states that he received the clerk's call at approximately 2:15 or 2:30 p. m. on Friday. The significance of this timing will become evident shortly.

On Monday morning, as the deputy clerk had promised, the case was called at 10:00 a. m. Plaintiff was not in court, nor was his attorney. A call from the deputy clerk brought into court shortly thereafter attorney Seymour Berger, an associate of Fred Peters, Esq., whom plaintiff had previously designated as trial counsel. Mr. Berger represented to the court that the plaintiff could not be located, and he asked for an adjournment. Thereupon defendants moved for dismissal, the court declared plaintiff in default, and the same day a judgment of dismissal was entered, on the ground that the plaintiff had "stated that he was not ready to proceed to trial * * *." Plaintiff himself arrived in the empty courtroom less than an hour after he had been declared in default.

Following the entry of judgment, plaintiff filed a motion to set aside the default, vacate the judgment and restore the case to the trial calendar. In support of the motion, affidavits were filed by plaintiff, by his attorney of record David Ampel, and by Berger, the representative of trial counsel who had appeared in court on the morning of the 17th.

According to the affidavits, plaintiff had been ready and available to go to trial at all times from the date of the aborted settlement conference until mid-afternoon on Friday, June 14th. On that Friday morning plaintiff called his attorney of record, Ampel, to inquire about the progress of the case. He was informed that no word had come from the clerk's office setting a specific date or time for trial. Plaintiff received the same information when he called again at noon. He called Ampel's office once more at approximately 2:00 p. m. The attorney was at lunch, but the secretary reported to plaintiff that there was still no word from the clerk's office. Shortly thereafter, plaintiff boarded a plane for St. Louis, en route to what was described in his affidavit as an emergency business conference. At 2:15 p. m. Ampel was back in the office, and at that time received the call from the deputy clerk informing him that trial was set for 10:00 a. m. on Monday. Ampel immediately called plaintiff's New York office, where plaintiff had previously arranged to be contacted, to discover that plaintiff had just left for St. Louis. Over the weekend, Ampel made numerous attempts to reach plaintiff's home in Pennsylvania, hoping to find out where in St. Louis he could communicate with plaintiff. Plaintiff's family were out of town for the weekend, and no contact was made.

Having been unable to reach plaintiff by Sunday evening, Ampel called Berger to explain the situation. Arrangements were apparently made for Ampel to call Berger when he heard from plaintiff, and that Berger should hold himself available the following morning, awaiting the call from Ampel.

On Monday morning, the day set for trial, plaintiff caught an early morning plane from St. Louis which arrived at LaGuardia airport at 11:00 a. m. He immediately called Ampel's office, where he was informed that trial had been set

for 10:00 that morning and instructed to go directly to court. Plaintiff arrived in the courtroom at noon, to find his case dismissed.

According to the affidavits, plaintiff attempted to telephone Ampel at his home on Sunday afternoon. Ampel was away from home most of that day, celebrating his 27th wedding anniversary with his wife and family. He in turn made several attempts to reach plaintiff at home, but to no avail.

When the case was called on Monday, and no one appeared for plaintiff, the deputy clerk called first Ampel's office and then the office of Fred Peters. There he contacted Berger, who appeared in court at 11:00 a. m. Some confusion obviously existed between plaintiff's attorneys, for although Ampel's office had been continuously in contact with plaintiff from June 6th until 2:00 p. m. Friday, June 14th, Berger represented to the court on Monday morning that "Mr. Ampel has been trying to contact the plaintiff from the time he left the conference room in this courthouse—[June 6th]—until as of last night when he called me at 7:30 at home." Upon that representation, Judge MacMahon ordered the entry of judgment by default. Plaintiff's subsequent motion to vacate the judgment and restore the action to the calendar was denied, the court stating that

> "[i]f counsel and litigants observe the rules and heed the directions of the court, perhaps we will make progress toward the ideal of current calendars. That goal will never be reached if we allow counsel and litigants to trifle with the rules and the court's directions, as was so plainly the case here."

■ It is well settled that an order of dismissal for failure to prosecute should not be reversed except for an abuse of discretion. Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.

2d 734 (1962); Schwarz v. United States, 384 F.2d 833 (2d Cir. 1967); West v. Gilbert, 361 F.2d 314 (2d Cir.) cert. denied, 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966). A motion to vacate the judgment of dismissal pursuant to Rule 60(b), F.R.Civ.P., is also addressed to the discretion of the court and will not be disturbed on appeal in the absence of an abuse of discretion.

In Schwarz v. United States, *supra,* we declined to find an abuse of discretion in a dismissal on grounds similar to those here where the trial court was "completely satisfied that the plaintiff's case was never prepared for trial and that counsel for the plaintiff never had any intentions to try it on the day that was set * * *." 384 F.2d at 835. In *Schwarz* we noted that "no steps taken to get ready are shown. No depositions were ever taken, or interrogatories served on prospective witnesses, in the five years the case was pending. * * * Under the circumstances, we cannot say that the remedy of dismissal of this five-year-old action was an abuse of discretion." *Id.* at 836. Nevertheless, we suggested "that the court keep in mind the possibility, in future cases of inexcusable neglect by counsel, of imposing substantial costs and attorney's fees payable by offending counsel personally to the opposing party, as an alternative to the drastic remedy of dismissal."

■ None of the circumstances leading to our conclusion to affirm in *Schwarz* were present in the case at bar. There is every indication that counsel was ready for trial and would have proceeded had plaintiff himself been in court. Interrogatories had been served, and counsel had submitted his trial memorandum along with requests to charge eight days before the case actually came on for trial.

The facts surrounding the dismissal on Monday morning are somewhat confused,[1] but two facts appear which could

---

1. Affidavits submitted by Seymour Berger and Harold L. Schwartz offer conflicting accounts of what occurred by telephone between the clerk's office and Mr. Am-

pel's secretary. Mr. Berger claims that the secretary informed the deputy clerk of plaintiff's arrival at the airport and his availability for trial during a conversation

justify the trial court's initial reaction. Although plaintiff's counsel was advised on Friday afternoon that the case would commence at 10:00 a. m. on Monday morning, plaintiff himself was not in court at the appointed time. Second, Berger's representation in court that Ampel had been unable to locate his client since the settlement conference perhaps supported a conclusion at that time that the plaintiff may have abandoned his action.

However, the affidavits submitted with the motion to reopen the case and vacate the default judgment make it clear that plaintiff was prepared to appear for trial at all times except for the two-hour period on the morning of Monday, June 17th, the date set for trial at 2:15 p. m. the preceding Friday. There is no indication that counsel was not prepared to try the case, nor any indication that further delay would have ensued once plaintiff arrived at noon.

In his opinion denying the motion pursuant to Rule 60(b), the trial judge found it "inconceivable that counsel would alow his client to leave town in the circumstances without first obtaining permission from the court." The affidavits in support of the motion show, however, that Ampel did not allow the plaintiff to leave town, but that plaintiff, correctly believing that trial had not been set, left town for the weekend without consulting his attorney. Certainly it was improper for plaintiff to absent himself from the jurisdiction over the weekend without clearing it with his attorney and the court, but other penalties short of dismissal were available to the court. Moreover, the trial judge characterized this situation as "plainly * * * a case where plaintiff's counsel have taken on more business than they can properly handle, as is demonstrated by their failure to set up a line of communi-

cation between them and their client * * *." From the explanation advanced by way of affidavits, it appears to us that plaintiff rather than counsel was responsible for the inability to contact him, albeit the attorneys were less than diligent in their communication among themselves.

The trial court concluded that "both plaintiff and his counsel were palpably at fault and must suffer the consequences." We agree that these facts demonstrate a failure of good judgment on the part of both, and their conduct on Monday morning was an affront to the court. Nevertheless, imposition of the most "drastic remedy" available to the court was not justified by these circumstances. We recognize that the trial judge must have the power to control his docket, and that adjournments, postponements and the rescheduling of cases contribute to the serious calendar problem existing in the Southern District of New York. "Since the trial judge must be entrusted with the power to alleviate calendar congestion, we shall not put obstacles in his way when he exercises his judgment wisely in achieving the desired goal." Davis v. United Fruit Co., 402 F.2d 328, 331–332 (2d Cir. 1968); Winston v. Prudential Lines, Inc., 415 F.2d 619, 620 (2d Cir. 1969). Nevertheless, as we said in Davis, *supra,* "a court must not let its zeal for a tidy calendar overcome its duty to do justice." 402 F.2d at 331.

We reiterate that "the purpose behind close docket control is that of assuring that justice for all litigants be neither delayed nor impaired." Winston, *supra,* 415 F.2d at 621. The trial court's refusal here to reopen a case whose dismissal rested on plaintiff's poor judgment does not comport with those ends, and justice has been impaired by such close inflexible attention to the docket. Whatever the merits of plaintiff's case

---

initiated by the clerk at approximately 11:00 a. m. Monday morning. The Schwartz affidavit reports an interview with the deputy clerk, in which knowledge by the clerk of the plaintiff's availability at that time was denied. Neither

the secretary nor the clerk was personally sworn or deposed, and we have not considered the portions of the affidavits relating to their conversation in rendering judgment on this appeal.

may be, in our opinion justice requires that he be given a fair hearing on his claim. We therefore remand to the trial court for proceedings consistent with this opinion.

Reversed and remanded.

No costs.