**Raymond N. THOMSEN, Plaintiff,**

v.

**TERRACE NAVIGATION CORPORATION and James W. Elwell & Co., Inc., Defendants.**

**No. 68 Civ. 3359.**

United States District Court, S. D. New York.

Jan. 8, 1973.

**426**

---

Raymond N. Thomsen, pro se.

Boal, Doti & Larsen, New York City, by William P. Larsen, New York City, for defendants.

GURFEIN, District Judge.

This is a motion by Raymond N. Thomsen, the plaintiff *pro se*, to restore to the calendar his action for negligence and unseaworthiness against Terrace Navigation Company. The plaintiff was allegedly injured on September 26, 1967 while serving as Chief Officer aboard the defendant's vessel, the S.S. Thunderbird, by the mechanical failure of a fire extinguisher on the vessel. He filed his complaint on August 21, 1968, retaining the law firm of Fields, Rosen, McElligott & Auslander to represent him. The defendants answered; discovery was had including a deposition of the plaintiff taken by the defendant. A

note of issue and a statement of readiness was filed on September 30, 1970 by the plaintiff's attorneys. A pre-trial conference was held and a pretrial order filed on April 1, 1971.

The case was placed on the Ready Day Calendar and when another pre-trial conference failed to effect a settlement the case was placed on the trial pool calendar on June 7, 1971. On October 1, 1971 counsel were notified by the deputy clerk that the case would shortly be assigned to a judge for trial. That day his attorneys wrote to the plaintiff at his home in Florida advising him that his case was to be called for trial. Unfortunately the plaintiff had left on September 25, 1971 for a long voyage on the S.S. Santa Barbara. He contends that he was told by his attorneys that he could leave on the voyage.

On October 14, 1971 the deputy clerk for calendars notified counsel that trial attorneys only were to appear before Judge Croake the next day to set a trial date. The plaintiff's attorneys, at the conference the next day, applied for an adjournment. Judge Croake denied the application and set the case down for trial on October 26 with instructions that the attorneys be prepared to try the case on that date or it would be dismissed. At the conference a settlement proposal of $7,500 was made by the defendant.

Immediately after the October 15th conference the attorneys sent a letter and a telegram to Mrs. Thomsen in Florida informing her that Judge Croake had set October 22 (rather than October 26) for trial, and that if her husband did not appear they would be forced to settle for $7,500. They requested her to cable her husband at sea and have him cable instructions to his attorneys. The plaintiff was so notified by cable on October 17, nine days before the trial was scheduled to commence. On October 18 Thomsen cabled the attorneys instructing them to refuse a $7,500 settlement and stating that he would be returning to the United States in January. The attorneys replied that the Court would

not grant an adjournment to January and unless Thomsen appeared in New York by the 22nd, they would be forced to settle or the action would be dismissed. The cable said, "Expect to see you on Friday." Thomsen answered by cable: "Ship at sea. Vocation makes being New York Friday impossible. Request new docket date. Settlement offer refused." This was the last correspondence between the plaintiff and his attorneys.

Thomsen not having appeared, his lawyers on October 26, the date set for trial, marked the case "settled," and on the representation by counsel that the action had been settled, Judge Croake signed an order of discontinuance that day. The settlement was for $8,500.

Thomsen returned to New York on March 1, 1972 where he was told of the settlement by his attorneys. He refused to accept it. He states that he was about to file this motion in August when he had to return to sea again.

Both the plaintiff's attorneys and the defendant cross-move to confirm the settlement.

The question of where justice lies when a seaman in a personal injury case is unable to appear because he is at sea and when the tightness of our Court calendars requires cases to be moved in orderly progression is not new to this District.

Our Court of Appeals has left a great deal to the discretion of the trial Judge. Davis v. United Fruit Company, 402 F. 2d 328 (2 Cir. 1968), cert. denied, 393 U.S. 1085, 89 S.Ct. 869, 21 L.Ed.2d 777 (1969). One of our distinguished colleagues, in the days of the master calendar, has twice been sustained in forcing a plaintiff seaman to trial although he was at sea. Davis, supra, and Michelson v. Moore-McCormack Lines, Inc., 429 F. 2d 394 (2 Cir. 1970).

In each of these situations the reason for affirmance was calendar con-

trol. These cases seem to make it plain that in this Circuit a seaman's status as a "ward of the court" does not prevail over the discretion of a District Judge in handling trial calendars.

The Davis case, supra, went to trial, albeit without the plaintiff as a live witness. In Michelson, the action was actually dismissed for failure to prosecute when, although plaintiff's counsel had a deposition from plaintiff to submit at trial, he refused to do so.

Here the case was not actually dismissed by Judge Croake nor is this Court a reviewing court competent to pass upon his orders. Counsel for the plaintiff in this case happen to be the same counsel who had their fingers burned in the Davis case in 1968. Whether Judge Croake would actually have dismissed the case or reluctantly granted an adjournment at the last minute on October 26 cannot now be known. From my discussions with Judge Croake on calendar control, it is my personal belief that he would not have dismissed the case. But not only a burnt child dreads the fire. The maxim applies to lawyers as well as children. Counsel for the plaintiff knew that if Judge Croake should exercise his discretion to dismiss, he would, in all likelihood, be sustained by the Court of Appeals. Counsel were in the delicate position of risking dismissal with no recovery for the client or taking a settlement they considered within reason. In choosing the latter course they avoided extreme risk against a trial outcome which was doubtful at best without the presence of the plaintiff.

It is true that normally, no matter how wise the choice of the lawyer in settling, a veto by the client makes the settlement untenable. And here the plaintiff did cable in no uncertain terms his rejection of a $7,500 settlement. As far as the plaintiff is concerned, the applicable doctrine is less of agency than of salvage. From the public point of view, to hold that a plaintiff at sea can blithely

attempt to control the court's docket while his attorneys are actually in the trial part by refusal to appear *or* settle would disturb the procedures which are vitally necessary for the speedy disposition of justice to all. And such tactics might even lay the groundwork for a second thought repudiation of honest settlements that had, in fact, been agreed to orally by plaintiffs.

■ I hold that, in these special circumstances, authority was imposed upon the attorneys to salvage what they could in the best interests of the client. The client was not ordering them to try the case. He was ordering them to adjourn the case; but this may have been beyond their power.

■ It is generally true that attorneys may litigate but may not settle controversies without the consent of the client, United States v. Beebe, 180 U.S. 343, 352, 21 S.Ct. 371, 374, 45 L.Ed. 563 (1901), citing Chief Justice Marshall in Holker v. Parker, 7 Cranch (11 U.S.) 436, 3 L.Ed. 396 (1813): "[T]he utter want of power of an attorney . . . to compromise his client's claim, cannot . . . be successfully disputed." See also Jacob v. City of New York, 119 F.2d 800 (2 Cir. 1941); Spisto v. Thompson, 39 A.D.2d 598, 331 N.Y.S.2d 818 (2d Dept.1972); Ingalls Iron Works Company v. Ingalls, 177 F.Supp. 151, 159 (N.D.Ala.1959).

But Chief Justice Marshall limited the application of the rule in the following terms:

"Although an attorney at law, merely as such, has strictly speaking, no right to make a compromise; yet a Court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the judgment of the attorney has been imposed upon, or not fairly exercised in the case. But where the sacrifice is such as to leave it scarcely possible that, with a full knowledge of every circumstance, such a compromise could be fairly made, there could be no hesitation in saying that the compromise, being unauthorized, and being therefore in itself void, ought not to bind the injured party." Holker v. Parker, *supra*, 7 Cranch at 452.

In the case at bar the settlement has not been shown to have been inadequate or improvident in the circumstances.* Under the then prevailing court rules when the case found its way to the trial calendar it was in litigation. Nor could the refusal of the settlement by the plaintiff have been unequivocal for he sought the best of all possible worlds— no settlement *and* adjournment. There is no telling what his response to the offer of settlement would have been had he known of the stark possibility of outright dismissal for failure of convincing proof. Since for him the choice was not clear, his optional response cannot be taken as unequivocal.

We are thus faced with a settlement the negation of which by the plaintiff in the circumstances is not a meaningful veto. Add to this the circumstance that the matter was not being settled in a claim adjuster's office but even beyond the courthouse steps. The management of litigation has always been the lawyer's exclusive task. Even his decision to discontinue and to take a dismissal without prejudice in compelling circumstances without the client's consent has been thought to preclude restoration to the calendar, (see Bacon v. Mitchell, 14 N.D. 454, 106 N.W. 129 (1906); see also Mongeon v. Burkebile, 79 N.D. 234, 55 N.W.2d 445 (1952), City of New Bruns-

---

* The plaintiff was injured when an old fire extinguisher he was examining exploded in his face requiring thirty-nine stitches. The plaintiff contends that the special damages based on lost wages alone amounted to over $11,000 against the $8,500 settlement. On the other hand there was a serious question of contributory negligence. The defendant had a deposition from the boatswain that the plaintiff had needlessly pulled the pin on the fire extinguisher before it exploded.

wick v. Upsilon Chapter, etc., 11 A.2d 430, 433, 18 N.J.Misc. 147 (1940)), and to remit the client to an action against an attorney. Sometimes "the necessity creates the authority, and the position of the attorney demands that the authority be exercised for the client's good." Union Mutual Life Ins. Co. v. Buchanan, 100 Ind. 63, 77 (1885).

If, upon a clear choice by the client the attorney settles *in invitum*, the presumption would be against validity. The client is not bound by an apparent authority of the attorney, for the adversary party knows that the attorney possesses no such apparent authority. Here the matter was in active litigation however. The auguries for success were poor and the rejection of the settlement by the client was based on the misconception that he was master of his own destiny. These strands, taken together, are strong enough, in my judgment, to bind the plaintiff who was more the beneficiary of salvage than the victim of an improvident judgment by his counsel.

This is a troublesome case, of a kind which I hope will not often arise in the more manageable individual judge calendars now in operation. Particularly because this Court is not competent to fashion doctrine in the face of persuasive precedent, I would like to see this matter get a thorough review by the Court of Appeals.

I know of no order I can sign to "enforce" the settlement. The order discontinuing the action with prejudice because it had been settled has already been signed by Judge Croake. Counsel for the plaintiff may pay into Court the amount of the settlement less their stipulated legal fees (Fed.R.Civ.P. 67; Shaver Transportation Co. v. Chamberlain, 399 F.2d 893, 895 (9 Cir. 1968)). If an order is required for the payment into Court on this condition, the counsel for plaintiff will submit such an order on notice.

The motion is denied with prejudice.