Miqueas TEN, Plaintiff-Appellant,

v.

SVENSKA ORIENT LINEN, Defendant and Third-Party Plaintiff-Appellee-Appellant,

v.

NACIREMA OPERATING CO., INC., Third-Party Defendant-Appellee.

Nos. 547 and 548, Dockets 77–7413 and 77–7450.

United States Court of Appeals, Second Circuit.

Argued Jan. 20, 1978.

Decided March 31, 1978.

---

Kenneth Heller, New York City, for plaintiff-appellant.

Haight, Gardner, Poor & Havens, New York City (Thomas F. Molanphy, New York City, of counsel), for defendant and third-party plaintiff-appellee-appellant.

Before SMITH, MOORE and GURFEIN, Circuit Judges.

PER CURIAM:

This is an appeal from the dismissal of a complaint by a longshoreman against a shipowner and employer for failure to prosecute. The District Court also denied appellant's motion under Rule 60(b), F.R.C.P., to vacate the dismissal. We reverse.

The plaintiff originally brought an action in the New York Supreme Court to recover damages for injuries which he sustained on September 12, 1972; while working as a longshoreman in the employ of Nacirema Operating Co., Inc. aboard defendant-appellee's M/S LAKE EYRE. The action was removed to the United States District Court by petition dated November 14, 1972. A motion to remand was denied and plaintiff's employer was impleaded. On February 23, 1977—some four and a half years later—the action was dismissed by the District Court for failure to prosecute in the following circumstances.

On December 6, 1976, a third pretrial conference was held. During the week of February 15, 1977, a pretrial order was prepared by Magistrate Raby which plaintiff's counsel refused to sign, but which was, nevertheless, signed by the Court upon recommendation of the Magistrate. Trial was set during that week for February 23, 1977.

A representative of plaintiff's counsel agreed to the date for trial and the defendant shipowner sent for a mate of the LAKE EYRE who was in Saudi Arabia. A deposition of the plaintiff had been taken by the defendant, but no deposition had been taken of the plaintiff by his own counsel (who contended that the medical condition of the plaintiff had worsened considerably since the adversary deposition had been taken in December 1974).

There is no doubt that plaintiff's counsel, in his argument before the District Court seeking a continuance, was brash and almost, but not quite, contemptuous. In pressing his argument with vigor, however, he was protecting his client's interest and we must view the facts objectively.

The plaintiff, allegedly as a result of the accident, has been totally disabled since February 8, 1973. Being unable to work, he returned to his native Puerto Rico to live. During the six months preceding the trial date, he was on standby ready to come to New York for the trial. Counsel was in touch with his wife through a delayed procedure of a notice to call, since the plaintiff did not have a telephone in his home.

Though plaintiff's counsel had indicated during the week of February 15, 1977 that plaintiff would be ready for travel, an un-

expected medical event occurred thereafter. On February 17, 1977, plaintiff was hospitalized for conditions including thrombophlebitis and cellulitis, and on Saturday, February 19, 1977, was transferred to the Aguirre Hospital from the Santa Rosa Hospital which had no emergency facilities. The diagnosis at Santa Rosa Hospital was "acute heart failure with AV Block". Dr. Frank Bellaflores, Medical Director of Aguirre Hospital, found "chronic thromboflebitis," "arteriosclerotic heart disease with premature heart beat," and "pulmonary congestion". The formal diagnoses were:

"1) Arteriosclerotic heart disease with cardiomegally

"2) Ischemic heart disease

"3) Bilateral apical plural thickening and adhesion with bullse in Rt. appex [sic]

"4) Cellulitis with chronic thrombophlebitis on left leg

"5) Chronic active genito urinary infection"

The medical orders were that the patient could not leave the hospital in less than two weeks, and that he was to be referred to Ponce Medical Service for specialized pulmonary and cardiac evaluation. The patient was not to be allowed to travel for at least two months.

When plaintiff's counsel got the news of Ten's hospitalization from Mrs. Ten on Saturday, February 19, 1977, he immediately notified defendant's counsel by telephone. Defendant's counsel stated that he believed its witness had already left Saudi Arabia in order to testify at the trial set for February 23.

On Wednesday, February 23, when the case was called, plaintiff's counsel asked for an adjournment to permit him to proceed to Puerto Rico "after the plaintiff has been released from hospital care, because his condition is described as serious, [and take] his deposition with regard to presentation of a plaintiff's case and not a defendant's case. Following the taking of this deposition . . the case [would] then proceed to trial."

The court, proceeding on the assumption that the plaintiff could not have come to New York anyway, on the representation that counsel's office had notified the court it would be ready, and on the fact that the defendant had already gone to the expense of bringing the mate from Saudi Arabia, rejected the possibility of an adjournment. He ordered counsel to proceed to trial immediately, and indicated that he would grant a long weekend recess, which would provide time for plaintiff's wife to travel to New York.

When plaintiff's counsel persisted in his refusal to go to trial, the court dismissed the case on the authority of *Michelsen v. Moore-McCormack Lines*, 429 F.2d 394 (2d Cir. 1970). In the course of the oral discussion, the court also cited as authority for dismissal *Davis v. United Fruit Co.*, 402 F.2d 328 (2 Cir. 1968), *cert. denied*, 393 U.S. 1085, 89 S.Ct. 869, 21 L.Ed.2d 777 (1969), and *Lamb v. Globe Seaways, Inc.*, 516 F.2d 1352 (2d Cir. 1975).

The court apparently felt that it was free to exercise its discretion to dismiss the action on the basis of those precedents. This was an erroneous view of the authority of those cases. Those cases involved seamen, who by the nature of their calling, would be likely to be at sea and unavailable for trial since District Court calendars move in unexpected ways. In such situations, the probability that plaintiff would be at sea when the District Court would call his case for trial is foreseeable. Hence, we have noted that a deposition of plaintiff should be taken by his own counsel as a protective measure.

Here we are dealing with a land-based longshoreman who ordinarily could have flown from Puerto Rico to New York in several hours. The anticipation of his unavailability would, in practical terms, hardly be greater than if he lived in Chicago. The cause of his inability to attend was not that he was at sea or that he lived in Puerto Rico, but that he had become acutely and dangerously ill just before the trial was to begin. We have not been cited to any decision which holds that a supervening illness falls within the rationale of the cases

cited by the District Court. The possibility that the plaintiff might die, if compelled to attend, makes this a different case.

The offer of plaintiff's counsel to take plaintiff's deposition after he could leave the hospital was quite a reasonable compromise, in view of the unexpected medical development. On the oral argument, moreover, plaintiff's counsel offered to pay whatever expenses the defendant incurred in having brought its witness from Saudi Arabia. We make this, as well as the reimbursement of defendant's costs in attending the deposition in Puerto Rico, conditions for reinstating the complaint, and reverse the order dismissing the complaint for failure to prosecute.