Antoinette **BARDIN** and **John Bardin,**
Plaintiffs-Appellants,

v.

Philip **MONDON,** Defendant-Appellee.
No. 99, Docket 27009.

United States Court of Appeals
Second Circuit.

Argued Nov. 30, 1961.

Decided Dec. 26, 1961.

Bernard Meyerson, Brooklyn, N. Y. and Bergman & Gruber, Forest Hills, N. Y., for appellants.

John G. Reilly, New York City (Reilly & Reilly and Michael J. Greene, New York City, of counsel), for appellee.

Before CLARK, FRIENDLY and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

The sole issue on appeal is whether Judge Dawson abused his discretion in dismissing under Rule 41(b), Fed.R. Civ.P., 28 U.S.C., with prejudice, an action brought by Antoinette and John Bardin against Philip Mondon to recover for personal injuries allegedly sustained through the latter's negligent operation of a motor vehicle. The dismissal resulted from the refusal of Bardin's counsel to proceed with trial as directed by the Court below.

Under all the circumstances of this case we conclude that Judge Dawson did not abuse his discretion in ordering the dismissal; but, for the reasons which will later be stated, we find it appropriate to remand the case with instructions to enter a dismissal without prejudice under the conditions which we will specify.

The action, commenced on July 23, 1958, was brought to recover damages for injuries claimed to have been suffered by Mrs. Bardin on August 4, 1957, while she was riding as a passenger in a car owned and operated by Mondon in the City of Newburgh, N. Y. The complaint alleged that the injuries were sustained when Mondon unexpectedly brought the automobile to a halt. Mrs. Bardin and her husband had retained the law firm

of Bergman & Cascella [1] to prosecute this action. Issue was joined [2] on August 7, 1958. A Note of Issue and Certificate of Readiness was filed on April 9, 1959, and on that day the case was placed on the permanent calendar of the Court. It should be noted that by filing this Certificate of Readiness the parties represented that they were in all respects ready for trial. The case reached the Reserve Calendar of the District Court on June 16, 1959. Five months later, on November 20, 1959, after a pre-trial conference before Judge McGohey, the case was placed on the Ready Day Calendar. It proceeded in regular fashion to the head of that calendar, and on April 19, 1961 it was assigned to Judge Dawson for trial, which was to commence on April 20, 1961 at 10:30 A.M.

In the meantime, the attorneys for Mondon received a letter (April 4, 1960) signed by Bardin's counsel of record, Ralph A. Cascella, advising them that the law firm of Bergman & Cascella had been dissolved, and that from thenceforth the Bardin case would be "handled by Marvin H. Bergman." The letter further stated, "Kindly address yourself to Mr. Marvin H. Bergman with respect to the future aspects of this litigation."

When the case was assigned to Judge Dawson on April 19, 1961, the Calendar Commissioner simultaneously notified counsel for both parties to be available for trial the following morning. On the next day, April 20th, Mondon and his counsel did appear, ready to proceed to trial. However, Mr. Bergman, representing the Bardins, was not ready, and applied to Judge Dawson for a three day adjournment. He advised Judge Dawson and Mondon's attorney that he had previously designated an associate, Mr. Manes, to try the case, but that Mr.

Manes had unexpectedly been hospitalized four days earlier. Mr. Bergman explained that when this happened it was thought that Mr. Manes would be discharged from the hospital promptly, but that it subsequently turned out that Mr. Manes would be indisposed for some time. The Court prodded Mr. Bergman to try the case himself, noting that he had been told the day before that this would be expected. Judge Dawson also reminded Mr. Bergman that he [Bergman] had been in charge of the case for several years, and pointed out that the case was a simple negligence action which he could try without any difficulty. Mr. Bergman, who brought neither his file nor his clients to court, continued to protest that he was not familiar with the facts of the case, and that he would have to insist on an adjournment so that Mr. Manes or someone else could handle it. The Court thought otherwise, and adjourned the proceedings until 2 P.M. that afternoon in order to permit Mr. Bergman to bring his clients to court and to prepare the case for trial, or to have someone else ready to try it for him.

At 2 o'clock a Mr. Peters appeared, and informed Judge Dawson that he had just been retained by Mr. Bergman to try the case. He said that he was unfamiliar with the facts involved but that he was willing to impanel a jury that afternoon if he could have an adjournment at least until the following morning before proceeding with the trial. Judge Dawson replied that he had already wasted the morning because of the failure of appellants' counsel to be ready to proceed, and that there was no mention of Mr. Manes, the excuse for that failure, anywhere in the court records. Since he had several cases scheduled to follow this one, the judge concluded that Mr. Peters' request for an adjournment was unreason-

---

1. It is not clear from the record whether the firm of Bergman & Cascella was in existence from the time when the action was brought, but since appellants refer to it as having represented them we use that designation for convenience.

2. The action was originally commenced in the Supreme Court of the State of New York, Putnam County, but was removed to the United States District Court for the So. Dist. of New York. Jurisdiction is based on diversity of citizenship, the plaintiffs being citizens of New York and the defendant a citizen of New Jersey.

able, and ordered that the action be dismissed pursuant to Rule 41(b).

### I.

Appellants urge, in effect, that this Court consider only the facts of April 19 and 20 in deciding whether Judge Dawson abused his discretion. This we cannot do. Mr. Bergman had been associated with this case on appellants' behalf for approximately three years. During this time the case moved slowly from one calendar to another, and, ultimately, to the Ready Day Calendar to the knowledge of all concerned. Under the District Court Calendar Rules then applicable,[3] if an event occurred which might require adjournment, an application was to be made to the Court "forthwith" in order to prevent the case from being assigned for trial. Although Mr. Manes, who appellants claim had been designated as trial counsel, took ill on April 16, no application was made by the Bergman firm for an adjournment. This remains true even though the parties were well aware that the case could be called for trial at any time, and on only 24 hours notice. The result was precisely what the Calendar Rules were intended to prevent. On the day of trial, appellants' counsel appeared before the trial judge wholly unprepared to proceed. The Court was left without a case ready to be tried; appellee and his counsel were left standing by; and a jury panel, each juror receiving $7. per day, was left unused. Cases scheduled for trial immediately after this one, would, if appellants' motion had been granted, have been displaced.

### II.

This Court cannot ignore the calendar problems which the judges of the Southern District of New York face; nor can we view this case in a vacuum. In that District, the largest one in the federal judiciary, there were 3,462 cases awaiting trial as of December 1, 1961, and there was a total of 12,336 cases pending on the docket. In April 1961, when the instant case was called for trial, there were 2,381 cases on the personal injury and death (jury) calendar alone.

It is because of this vast amount of litigation, often very complex in nature,[4] that the District Court has repeatedly inaugurated calendar reforms. The calendar rules which have resulted from these attempts at reform were not promulgated to make the practice of law more difficult. They were intended to help the court assure the prompt and fair disposition of its cases.

One of the most perplexing problems which the rules attempted to solve was that created by applications for adjournment frequently made on the eve of trial. It has not been uncommon for the calendar clerk to call counsel in many cases on the Ready Day Calendar in order to find a single case ready for trial.[5]  It

---

3. "Rule 7. Adjournment and Holding of Causes.

    \*    \*    \*    \*    \*

"(b) *Ready Calendars.*

"A cause on the Ready Day Calendar or Ready Waiting List may not be adjourned except for good reason arising after it has been published. If there is a change in the readiness status of a cause \* \* written application must be made forthwith to the Part 1 Judge, upon notice to all parties and the deputy clerk for calendars. \* \* \*

"(c) *After Assignment to a Trial Part.*

"Each cause assigned to a trial part shall be tried or dismissed. Where a good cause for adjournment has arisen after assignment to a trial part, application for adjournment shall be made to the trial judge. \* \* \*"

4. The true calendar problem in the Southern District of New York cannot be explained in numbers alone. The type of litigation tried by the judges gives added significance to the already weighty figures. Thus, as of June, 1961, there were approximately 300 of the "so-called long and protracted, and the complicated or involved suits" pending before the court. Annual Report of the Chief Judge, S.D. N.Y., 1961, pp. 4-5. These cases, normally assigned to an individual judge for handling, require frequent pre-trial conferences and often culminate in lengthy trials consuming months of a judge's time.

5. One of the principal reasons for nonreadiness is the failure of counsel to fully prepare their cases until the last minute.

does not require the exercise of much imagination to understand the problems and inconvenience to the court and litigants alike which results from this. The trial judges are left without cases ready to try, and genuinely ready cases languish far down on the calendar.

■ But, calendar rules are not self-executing, and the trial judges must be left with a broad measure of discretion in their enforcement. Only in this way can we avoid rendering the District Court helpless to cope with the calendar congestion which, as Chief Justice Warren has pointed out, is "compromising the basic legal rights of countless thousands of Americans, and, imperceptibly, corroding the very foundations of constitutional government in the United States."

Furthermore, the Judicial Conference of the United States has declared it to be "the policy of the judiciary that every case pending three years or more and appropriate for trial be regarded as a judicial emergency by all the judges of any circuit where such cases are to be found * * *" and this case is exactly within the scope of this declaration.[6]

### III.

■ In view of all this, we believe that Judge Dawson did not abuse his discretion in the present case. Cf. Joseph v. Norton Co., 273 F.2d 65 (2d Cir. 1959); Levine v. Colgate-Palmolive Co., 283 F.2d 532 (2d Cir. 1960), cert. denied

This is, of course, in violation of their duty to their clients and to the court, and is contrary to their affirmation of readiness made when they filed the "Certificate of Readiness" months and perhaps years before.

6. See 1961 Annual Report of the Administrative Office of the United States Courts, p. VII–2.

7. The fact that Mr. Peters was prepared to try the case with one day's notice suggests that Mr. Bergman could have tried

365 U.S. 821, 81 S.Ct. 705, 5 L.Ed.2d 699 (1961). Confronted with excuses concerning the illness of an attorney, who, insofar as the record was concerned, had no connection with the case at all, and a case which was apparently simple enough for any experienced trial attorney to handle,[7] the trial judge exercised his discretion in a reasonable manner.

Nevertheless, appellants have suffered from the sins of their counsel, sins of which they probably knew nothing at all. Although a litigant is ordinarily bound by the mistakes of his counsel, in this instance, we think it would serve a better purpose to require counsel himself to pay for the inconveniences caused by his own dilatory conduct.

As a result, we hold that the case ought to be remanded with instructions that it be dismissed without prejudice[8] for failure to comply with an order of the court (Rule 41(b)), see 5 Moore, Federal Practice, p. 1040 (2 ed. 1961) on condition that Mr. Bergman pay all trial and appellate court costs taxed to the Bardins, and for having so multiplied the proceedings as to increase costs unreasonably, that he pay an additional $100. in costs to be imposed by the District Court, all costs to be paid within 30 days after the entry of the District Court's order. 28 U.S.C. § 1927; Rule 16(c), Calendar Rules, S.D.N.Y. If payment is not made as directed, the action will be dismissed with prejudice.

Remanded.

it on April 20 after having been notified on April 19 that trial would then take place.

8. The statute of limitations is no bar. Sec. 23, N. Y. Civil Practice Act. Although the trial court ordered the case dismissed "for want of prosecution" under Rule 41(b), we think it was actually dismissed for failure to comply with an order of the lower court, and therefore the exception in Sec. 23 for cases dismissed for want of prosecution is not applicable.