**In re John Joseph SUTTER, Esq., Appellant.**

**No. 136, Docket 76–1194.**

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1976.

Decided Oct. 20, 1976.

Gino Papa, Mineola, N. Y. (James R. Moffatt, Mineola, N. Y., of counsel), for appellant.

Josephine Y. King, Asst. U. S. Atty., E. D. N. Y., Brooklyn (David G. Trager, U. S. Atty., Alvin A. Schall, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y., of counsel), for United States.

Joseph W. Ryan, Jr., Mineola, N. Y., for amicus curiae, Bar Association of Nassau County, New York, Inc.

Harrison L. Currey, Lake Grove, N. Y., for amicus curiae The Suffolk County Criminal Bar Association.

Before SMITH, OAKES and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

We are asked to review a district judge's application of Rule 8(b) of the Individual Assignment and Calendar Rules of the United States District Court for the Eastern District of New York. Rule 8(b) authorizes district judges in the Eastern District to "assess reasonable costs directly against counsel whose action has obstructed the effective administration of the court's business." Pursuant to this rule, Judge Platt assessed costs of $1,500 against John J. Sutter, Esq., for causing a three-day delay in the start of a trial.[1]

Mr. Sutter is a lawyer with an active trial practice in both the federal and New York State courts. On March 5, 1975, Philip Rastelli, Louis Rastelli, Anthony DeStefano, Carl Gary Petrole and the Workmen's Mobile Lunch Association, Inc., were indicted on racketeering charges, and shortly thereafter Mr. Sutter undertook the representation of Philip Rastelli. The case was adjourned several times, and on January 5, 1976, the government and defense counsel agreed to try the case on Monday, March 29, 1976.[2] All counsel, including Mr. Sutter, were issued Certificates of Engagement for that date.

On February 28, 1976, Mr. Sutter was retained to try the case of *New York v. Gregory Charmont* in Nassau County Court before Judge Alfred F. Samenga. Charmont was accused of the attempted murder of two police officers, and his family sought Mr. Sutter's services after Charmont's original lawyer became "unavailable" on the eve of trial for some reason not clear in the record. Judge Samenga ordered the Charmont trial to commence on Monday, March 8, 1976, apparently because the state's principal witness was suffering from cancer and his condition was deteriorating. Both Judge Samenga and the prosecutor estimated that the trial, which was to be conducted without a jury, would require no more than two weeks. Assuming that the Charmont trial would take, at most, three weeks instead of two, Mr. Sutter determined that the trial would finish no later than Friday, March 26th, and that he would have time to be ready for the Rastelli trial before Judge Platt on Monday, March 29th. Apparently, Mr. Sutter did not consider the possibility that his trial schedules would conflict to be sufficient reason either to inform Judge Platt that he had begun another trial or to display his Certificate of Engagement to Judge Samenga.

Mr. Sutter's conduct of the Charmont trial was both diligent and skillful. He worked day and night to prepare for the trial, and he won an acquittal for Mr. Charmont on the attempted murder charges. Unfortunately, that trial lasted six weeks instead of two. Thus, the conflict in trial schedules that appeared unlikely to Mr. Sutter prior to March 8th became a reality on March 29th.

Sometime prior to March 18, 1976, Stephen L. Wilson, Esq., an associate of Mr. Sutter's, told Assistant United States Attorney Carl Bronstein that Mr. Sutter might be engaged on March 29th. Mr.

---

1. *Judge Platt did not specifically state, at the time costs were being imposed or in his Memorandum and Order, whether Mr. Sutter was being fined for contempt or whether costs were being assessed under Rule 8(b). While it would have been preferable for the judge to have been specific, his imposition of costs must be upheld if there is any basis upon which it can be justified. Since we conclude that the assessment can be justified under Rule 8(b), we* do not reach the questions of whether the notice and hearing requirements of Fed.R.Crim.P. 42(b) were complied with or whether Mr. Sutter's conduct was contemptuous.

2. The government had sought an adjournment until March 1, and the defendants had sought an adjournment until March 29. After some discussion before Judge Platt, March 29 was selected as a date agreeable to all.

Bronstein told Mr. Wilson that he would call the court, and he did so.[3] Upon being informed that Mr. Sutter might not be ready to start the trial on March 29th, Judge Platt scheduled a pre-trial conference for March 19th, to inform counsel that there would be no further adjournments.

On March 19, 1976, Mr. Wilson appeared for Mr. Sutter, and Michael Rosen, Esq. appeared for the law firm of Saxe, Bacon & Bolan. Messrs. Wilson and Rosen asked Judge Platt to permit the Saxe firm to be substituted for Mr. Sutter. Mr. Wilson told Judge Platt that Mr. Sutter was engaged in a trial in Nassau County Court, but he did not make it clear that Mr. Sutter would be so engaged on March 29th. The principal reason he gave for requesting the substitution was lack of preparation for trial. Mr. Rosen asked for an adjournment of thirty days. Judge Platt said he would agree to the substitution only if the Saxe firm would agree to begin the trial on March 29th. When the conference ended, the matter had not been resolved.

On March 24, 1976, a second conference was held. The government, reconsidering the requests for substitution and adjournment, expressed concern that Mr. Sutter's client would appear to be inadequately represented. The government joined with Roy Cohn, Esq., of the Saxe firm in seeking a one-week adjournment. This request was based in part upon the fact that, since one co-defendant had been severed, the trial was expected to be shortened by two weeks. Judge Platt denied the request, saying,

> The government has no say in this matter. The Court is not going to grant any adjournment. Mr. Philip Rastelli has had in my book one of the best law firms in Suffolk County. Mr. Sutter is a well known, and as I understand it, a very competent attorney. I don't for one min-

ute believe that Mr. Sutter is not capable of trying this case.

That response is significant for it indicates that as late as March 24, 1976, Judge Platt had not yet been fully apprised of the situation regarding Mr. Sutter's engagement in the Nassau County Court. The focus of both counsel and the Court was upon Mr. Sutter's alleged lack of preparation. The imminent conflict between the schedules of the two trials that Mr. Sutter had undertaken to conduct was not even mentioned.

On March 26, 1976, the Saxe firm sought a writ of mandamus from this Court. We denied the petition on March 29, 1976, on the ground that, under *Stans v. Gagliardi*, 485 F.2d 1290 (2d Cir. 1973), we lacked the power to hear the matter. *Rastelli v. Platt*, 534 F.2d 1011 (2d Cir. 1976) (Per Curiam). This Court earnestly requested, however, that Judge Platt reconsider his decision.

Also on March 26, 1976, Mr. Sutter filed an affidavit with Judge Platt which explained fully the circumstances surrounding his engagement in Nassau. Judge Platt telephoned Judge Samenga and confirmed what had been said in the affidavit. Judge Platt asked Judge Samenga whether he had been told of Mr. Sutter's prior engagement. Judge Samenga said that he had not and that, if he had been, the prior engagement would have been honored.

On March 29, 1976, Mr. Sutter did not appear in Judge Platt's court, and Judge Platt imposed a "contingent fine of $1,000 on Mr. Sutter for his failure to appear in accordance with the mandate of this Court." The fine was contingent upon Mr. Sutter's appearance, and was to run at the rate of $1,000 for each day on which Mr. Sutter failed to appear. Judge Platt proposed to call the case on a day-by-day basis with all other attorneys being deemed engaged until Mr. Sutter appeared.[4]

---

**3.** The record is unclear regarding whom Mr. Bronstein spoke with or what message he conveyed. What is clear is that "rumors" reached Judge Platt's chambers to the effect that "Mr. Sutter might be 'unavailable' to commence the trial . . . and that his client . . . would seek yet another medical adjournment." Memorandum and Order at 4.

**4.** We strongly disapprove of this procedure. Judge Platt's solution to the problem simply left everything up in the air, and it served no constructive purpose. Steps should have been taken to substitute the Saxe firm and to insure that the trial would begin as expeditiously as possible, and the question of possible sanctions to be imposed on Mr. Sutter should have been

Mr. Sutter obtained permission from Judge Samenga to appear before Judge Platt on March 30, 1976. Mr. Sutter was represented on that day by his law partner, James Moffatt, Esq. After hearing argument by Messrs. Sutter and Moffatt, Judge Platt agreed to permit the Saxe firm to be substituted for Mr. Sutter, agreed to an adjournment until Thursday, April 1, 1976, and imposed a "fine of $500 a day for each day of . . . delay" caused by Mr. Sutter's conduct. The Memorandum and Order from which Mr. Sutter appeals states that the court imposed "costs" rather than a "fine." The reason for the imposition of costs was Mr. Sutter's failure to inform the district court of his engagement in the Nassau County Court and his failure to advise the Nassau County Court of his engagement in the federal district court. The trial before Judge Platt began on Thursday, April 1, 1976. Thus, the trial was delayed for three days, and the costs assessed against Mr. Sutter amounted to $1,500.

Rule 8 of the Individual Assignment and Calendar Rules for the Eastern District provides,

Rule 8. Sanctions.

(a) Dismissal or default. Failure of counsel for any party to appear before the court at a conference, or to complete the necessary preparations, or to be prepared to proceed to trial at the time set, may be considered an abandonment of the case or failure to prosecute or defend diligently, and an appropriate order may be entered against the defaulting party either with respect to a specific issue or on the entire case.

(b) Imposition of costs on attorneys. If counsel fails to comply with Rules 3(f), 6(f) or 7 or a judge finds that the sanctions in subdivision (a) are either inadequate or unjust to the parties, he may

assess reasonable costs directly against counsel whose action has obstructed the effective administration of the court's business.

Rule 9(a) of the Criminal Rules for the Southern and Eastern Districts, Plan for Achieving Prompt Disposition of Criminal Cases, provides in part,

Neither a conflict in schedules of Assistant United States Attorneys nor a conflict in schedules of defense counsel will be ground for a continuance or delayed setting except under unusual circumstances approved by the court and called to the court's attention at the earliest practicable time.

■ Assuming, without deciding, that Mr. Sutter's engagement in Nassau County Court qualifies as an "unusual circumstance" under Rule 9(a), it is clear that he failed to call this unusual circumstance to Judge Platt's attention "at the earliest practicable time." Over two weeks elapsed between the time Mr. Sutter was retained by Charmont and the time the first hint was given by Mr. Wilson to the Assistant United States Attorney that Mr. Sutter might be engaged on March 29, 1976. Not until he received Mr. Sutter's affidavit on March 26th was Judge Platt adequately apprised of the situation. Since Mr. Sutter failed to alert the court at the earliest practicable time, Judge Platt was justified, under Rule 9(a), in refusing to grant the 30-day adjournment asked for in the affidavit.

■ Judge Platt's earlier denials of motions for substitution of counsel and for adjournments were also justified because these had been based upon Mr. Wilson's representations to the effect that Mr. Sutter was not adequately prepared to try the case.[5] Judge Platt simply did not believe

---

treated independently. In addition, it would have been advisable for Judge Platt to refer the matter of costs to another judge. Although this is not required by Rule 8, we feel that such a procedure would be preferable as it would avoid even the appearance that the court's judgment is colored by any personal animosity between judge and lawyer.

5. It should be noted that Judge Platt's earlier rulings were also based upon the fact that, in anticipation of the March 29th trial date, he had made special arrangements to obtain the courtroom, had required counsel in innumerable cases to adjust their schedules, had declined to take other urgent cases and had made arrangements with Judge Weinstein to "share"

that representation to be true, and, in view of the length of time Mr. Sutter had to prepare the case and his competence as a trial lawyer, we cannot conclude that Judge Platt was mistaken. If there were additional factors justifying the substitution and adjournment, then it was incumbent upon Mr. Sutter to bring those factors to the court's attention. The court was not properly informed of Mr. Sutter's unavailability until Friday, March 26, 1976.[6] At that point, the best that could be hoped for was a delay of only one day, since it was obvious that the trial would not begin on Monday, March 29, 1976.

■ Because Judge Platt was justified in not granting the adjournment requested on March 26th, Mr. Sutter was guilty of a failure to "defend diligently" within the meaning of Rule 8(a) when he failed to appear in the district court on March 29th. Since a dismissal or a default under Rule 8(a) is not an available sanction in a criminal case, Judge Platt was allowed, under Rule 8(b), to assess reasonable costs against Mr. Sutter.

■ What has been said does not end our inquiry, however. In the brief submitted on behalf of the Bar Association of Nassau County as *Amicus Curiae*, it is argued that the standards for an assessment of costs under Rule 8(b) should be the same as the standards for imposing the sanction of contempt under 18 U.S.C. § 401. Under the contempt statute it is necessary to find a willful disregard or disobedience of the court's authority. The Bar Association argues that

> We can see no justification for a Court to punish an attorney for conduct considered detrimental to the administration of the Court's business without a finding that it was the product of wrongful in-

tent by the attorney. To hold otherwise would mean that an attorney can be disciplined by financial reprisal for conduct attributable to mistake, inadvertance [sic] or error of judgment. This ominous result is wholly undesirable to the administration of the Court's business. It creates an apprehensive atmosphere among members of the Bar that can only deter experienced and able trial lawyers from accepting engagements in the Federal Courts.

Brief at 17.

We disagree. Rule 8 cannot be read so as to require the same finding of willful intent required by the contempt statute. Such a reading would render the rule superfluous. While we agree that attorneys should not be "disciplined by financial reprisal for conduct attributable to mistake, inadvertence or error of judgment," that is not what has happened here. Mr. Sutter's conduct was attributable to recklessness. When he accepted the Charmont case without notifying either Judge Platt or Judge Samenga, he took a risk that the Charmont trial would not be finished by March 29th. While that risk may have appeared slight in early March, it grew to a certainty during the weeks that followed. The longer Mr. Sutter kept the risk to himself, the greater his negligence became. By waiting until March 26, 1976, he was guilty of recklessness. Rule 8 requires of attorneys at least a reasonable degree of attentiveness to their responsibilities to the court. We hold that Mr. Sutter failed to meet that standard, and we believe this result is neither "ominous" nor "wholly undesirable to the administration of justice." And although we agree that "the Federal Courts should make every effort to coordinate its discipline practice with that of the state," *Petition of Merry Queen Transfer Corp.*, 269

---

an attorney who would try two cases before both judges simultaneously, with the help of an assistant.

**6.** The only prior indications given to Judge Platt that Mr. Sutter might be engaged in another trial on March 29th were (1) Mr. Bronstein's "rumor" and (2) Mr. Wilson's mentioning that the reason for Mr. Sutter's absence

from the March 19th conference was his actual engagement in a murder trial in Nassau County. Even taken together, these indications were wholly inadequate to discharge Mr. Sutter's responsibility to inform Judge Platt of the problem, particularly in light of the emphasis placed, by all concerned, upon Mr. Sutter's alleged lack of preparation.

F.Supp. 812 (S.D.N.Y.1967), we do not believe that our decision will violate that principle or "deter . . . trial lawyers from accepting engagements in the Federal Courts." Indeed, we are hopeful that our decision will have a positive effect by deterring recklessness among trial lawyers in the federal courts. Those lawyers who are attentive to their responsibilities need not be "apprehensive" about "financial reprisals" as a result of honest mistakes or errors of judgment.

◼ Next, we turn to the question of whether the amount of the costs assessed was reasonable. We conclude that it was. As a direct result of Mr. Sutter's conduct, Judge Platt and other court personnel, numerous jurors and several lawyers were inconvenienced. In that respect, this case is not unlike *Bardin v. Mondon*, 298 F.2d 235 (2d Cir. 1961), in which this Court authorized the imposition of costs upon counsel pursuant to 28 U.S.C. § 1927.

A jury panel of 75 persons was called on March 30th solely for Judge Platt, and a second panel of 130 persons was called on March 31st, also solely for Judge Platt. 28 U.S.C. § 1871 provides for the payment of fees to jurors at the rate of $20 per day. Thus, the cost of paying the jurors' fees on the 30th alone amounted to $1,500, the total amount of Mr. Sutter's liability. The levy against Mr. Sutter was therefore merely a contribution towards the payment of the additional costs resulting from the three days' delay. While we recognize that $1,500 is a considerable sum and that this is apparently the first time Rule 8(b) has been applied, we must also be mindful of the fact that Mr. Sutter's failure to appear on the day set for trial was a serious matter and caused great inconvenience and expense to all concerned. In view of this, we are unable to conclude that the amount of the costs assessed was unreasonable.

◼ Neither the parties nor the *amicus curiae* question the validity of Rule 8(b). In view of the fact that the Third Circuit

Court of Appeals has invalidated a similar rule imposing sanctions on lawyers,[7] and because this is the first time this Court has upheld such a sanction in a criminal case, we feel it is necessary to consider the question.

In *Heckers v. Fowler*, 69 U.S. (2 Wall.) 123, 17 L.Ed. 759 (1864), the Supreme Court explained that "all . . . Federal courts, have authority to make and establish all necessary rules for the orderly conducting business [sic] in the said courts, provided such rules are not repugnant to the laws of the United States." *Id.* at 128, 17 L.Ed. 759. Twenty-three years later, Congress enacted the predecessor to 28 U.S.C. § 2071, which now provides,

> The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court.

To like effect is Fed.R.Civ.P. 83, which reads, in part,

> Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules. . . . In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules.

Fed.R.Crim.P. 57 contains a similar provision.

Rule 8 is not inconsistent with any Act of Congress or any Rule prescribed by the Supreme Court. Indeed, Congress has enacted legislation, 28 U.S.C. § 1927, and the Supreme Court has promulgated a rule, Fed.R.Civ.P. 37(b)(2)(E), which, although inapplicable here, both reflect a purpose that is entirely congruent with that of Rule 8, namely, to encourage lawyers to conduct themselves in such a manner as will not frustrate or delay the effective administration of justice.

---

7. *Gamble v. Pope & Talbot, Inc.,* 307 F.2d 729 (3d Cir.) *(en banc), cert. denied,* 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962).

Rule 8 was promulgated in 1969, and although its origins are somewhat obscure it appears to have been based in part upon the intensified concerns, expressed in 1968, over the increasing backlog of calendars.[8]

In *Davis v. United Fruit Co.*, 402 F.2d 328 (2d Cir. 1968), this Court reaffirmed the principle that a client "cannot be permitted to avoid the acts or omissions of his freely selected counsel." *Id.* at 331. That rule, while a necessary one in our system of representative litigation, can, at times, operate unfairly. Rule 8(b) is an attempt to ameliorate this problem by providing that when the sanctions in Rule 8(a) are "inadequate or unjust to the parties" the court may assess costs against counsel.

The Eastern District is by no means alone in its recognition of the unfairness of visiting the sins of an attorney upon his client and the need for a sanction in the nature of Rule 8(b). *See Ali v. A & G Co.*, 542 F.2d 595, 597 (2d Cir. 1976) (Oakes, J., dissenting); *Richman v. General Motors Corp.*, 437 F.2d 196 (1st Cir. 1971); *Schwarz v. United States*, 384 F.2d 833 (2d Cir. 1967); *Bardin, supra; Schneider v. American Export Lines, Inc.*, 293 F.Supp. 117 (S.D.N.Y.1968); *United Sheeplined Clothing Co., Inc. v. Arctic Fur Cap Corp.*, 165 F.Supp. 193 (S.D.N.Y.1958); *Farm Automation Corp. v. Senter*, 382 N.Y.S.2d 525 (App.Div. 2d Dept. 1976); *Kahn v. Stamp*, 382 N.Y.S.2d 199 (App.Div. 4th Dept. 1976); *Cichorek v. Cosgrove*, 47 A.D.2d 883, 367 N.Y.S.2d 7 (1st Dept. 1975); *Moran v. Rynar*, 39 A.D.2d 718, 332 N.Y. S.2d 138 (2d Dept. 1972). See also McLaughlin and Siegel, Practice Commentaries to CPLR 3404 (McKinney 1975–1976 Cumulative Annual Pocket Part).

We are aware that there is some authority for the proposition that district courts lack the power to promulgate local rules such as 8(b) and are limited in their power to discipline lawyers to the contempt statute. *See Gamble v. Pope & Talbot, Inc.*, 307 F.2d 729, 732 (3d Cir.) (*en banc*), *cert. denied*, 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962).[9]

In *Bardin, supra*, and *Schwarz, supra*, this Court tacitly approved a local rule almost identical to Rule 8(b). Calendar Rule 16(c) of the Southern District of New York (added September 1, 1961, repealed May 18, 1972).[10] We find nothing objectionable about the operation of that rule. *See Schneider, supra*. The Fifth Circuit Court of Appeals has recognized that, "[t]he inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Flaksa v. Little River Marine Constr. Co., Inc.*, 389 F.2d 885, 888 (5th Cir. 1968); *see Woodham v. American Cystoscope Co.*, 335 F.2d 551, 557 & n. 15 (5th Cir. 1964) (Wisdom, J.). Whether grounded upon the inherent power of the court or upon the rule-making power conferred by 28 U.S.C. § 2071, the operative principle is the same: if the local rule is related to the management of the court's business and it is not inconsistent with a statute or other rule or the Constitution, then it is valid. We, therefore, decline to follow the Third Circuit, and we hold that district courts have the power, absent a statute or Supreme Court rule to the contrary, to promulgate local rules that impose sanctions for con-

---

8. See *Davis v. United Fruit Co.*, 402 F.2d 328 (2d Cir. 1969).

9. Chief Judge Biggs and Judge Goodrich dissented in the *Gamble* case. 307 F.2d at 733 and 737. The decision of the majority has been criticized. *See, e. g.*, Comment, *Sanctions at Pre-Trial Stages*, 72 Yale L.J. 819 (1963).

10. Rule 16 provided in part as follows:
 In the sound discretion of any judge of this court, one or more of the following sanctions may be imposed for failure to comply with the Calendar Rules:

\* \* \* \* \* \*

(c) Imposition of Costs on Attorneys
If counsel fails to comply with any of the Calendar Rules and the judge finds that the sanctions in sections (a) and (b) above are either inadequate or unjust to the parties in light of the facts or circumstances, he may, in addition to, or in lieu of, such sanctions assess reasonable costs directly against counsel whose action has obstructed the effective administration of the court's business.

duct by lawyers that falls short of contempt of court.

There is nothing arbitrary or unfair about Rule 8(b). It is a reasonable response to the serious problem of calendar congestion. As we said in *Davis, supra,*

In order to reduce this choking congestion, the district courts must be permitted to exercise their discretion in appropriate ways that will ensure justice to all who seek it. 402 F.2d at 331.

Rule 8(b) is an appropriate exercise of discretion on the part of the Eastern District, and we accordingly hold that it is valid, both on its face and as applied in this case.

The judgment of the district court is affirmed.