UNITED STATES of America, Appellee,

v.

Howard WENDY, Appellant.

No. 571, Docket 77–1421.

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1978.

Decided April 14, 1978.

Howard Wendy, pro se.

Paul Vizcarrondo, Jr., Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York, Robert J. Jossen, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before FEINBERG and OAKES, Circuit Judges, and WYATT, District Judge.*

OAKES, Circuit Judge:

This appeal is by an attorney from an order of the United States District Court for the Southern District of New York, Thomas P. Griesa, *Judge,* finding him in contempt of court on December 13, 14 and 15, 1976, for refusing to proceed to trial as ordered in *United States v. Harris,* 76 Cr. 602. The order, assessing a fine of $500 for each day, or a total of $1,500, was made after Judge Gerard L. Goettel, who cited Wendy for contempt when he refused to proceed with a scheduled trial, had referred the matter to the Reassignment Committee which in turn reassigned the matter to Judge Griesa. We reverse.

Though a member of the Bar of the Southern District, appellant Howard Wendy is not a criminal trial lawyer. Rather, he is a tax lawyer and, at the time of the purported contempt, was a partner in the firm of Kassner & Detsky. In connection with the *Harris* case, a criminal tax evasion indictment, Wendy was present at Harris's July 8, 1976, arraignment. He subsequently filed a notice of appearance form which included his own signature and the name and address of the Kassner firm. On August 18, September 7, September 21, and October 12, 1976, Wendy appeared before Judge Goettel in connection with preliminary matters. At the September 21, 1976, conference, the Speedy Trial deadline of December 29, 1976, was duly noted. And on October 12 the district judge declared, with the agreement of both Government counsel and Mr. Wendy: "I will commence the trial on December 13th."

On December 13, in answer to the judge's question whether the defendant was ready to proceed, Wendy replied in the negative and explained:

I have never tried a case. My background is tax and accounting, and I am assisting Mr. Kassner. I have no experience as a trial attorney, I have never tried a tax case, and I don't feel competent to try this tax case.[1]

---

* Of the Southern District of New York, sitting by designation.

1. Wendy had already demonstrated his trial inexperience to some extent by suggesting that "if Mr. Kassner weren't actually engaged, Your Honor, I doubt whether he would be able to start the trial, as the Government just handed us [some § 3500] material this morning." Under the Jencks Act, 18 U.S.C. § 3500(a), such material is not discoverable "until said witness has testified on direct examination in the trial of the case." The Government thus had no obligation to give counsel the material as early in the proceedings as it did. Of course, the Government was wise to do so because

The judge reminded him that he had appeared personally and recalled "the recent Second Circuit case [*In re Sutter,* 543 F.2d 1030 (2d Cir. 1976)] in which the attorney was assessed fines of $500 a day for doing precisely what Kassner is attempting to do here, namely, on the last working day before trial announc[ing that] he was engaged in a state proceeding and would not be prepared to go ahead until some later date."[2] The judge then warned that "if this case is delayed, it is going to be at the rate of $500 a day fine against Mr. Kassner."

Mr. Wendy stated that he had intended to enter an appearance on behalf of the firm, not himself, and that if he signed the paper in his name it was inadvertent. He then explained that Kassner's absence was occasioned by slow proceedings in a state court action.[3] The Assistant United States Attorney said that he first learned of Kassner's state court involvement on the previous Thursday, December 9. The judge added that he had not heard of Kassner's conflict until Friday, December 10, and that he had "relayed the message back that a continuance would not be granted, and if counsel was actually unprepared to proceed, there would be fines levied under the authority of the *Sutter* case, and that is where we stand."[4] The judge then asked Wendy if he wished to proceed. When Wendy replied that he preferred "not to go ahead," the court for the first time indicated that the $500 fine would be assessed "against [Wendy] personally as attorney of record." Some discussion of the Speedy Trial Act

followed. The court then asked again whether Wendy was prepared to try the case and, upon the latter's negative answer, declared:

> All right, be back here tomorrow morning. We will go through the same procedure again, and I intend to find you in contempt and assess fines against you of $500 for each day you are unprepared to proceed.

On the following day, December 14, Wendy acknowledged that the defendant was not ready and applied for an adjournment. He attempted to distinguish *Sutter* on the basis that Sutter took on the state court case three weeks before he was scheduled to start trial in federal court while Kassner had accepted the state court case a year and a half before. Wendy also pointed out that "the firm should certainly be the one, and I was never intended to be the attorney of record . . . ." Discussion of a continuance transpired after which Wendy presented the judge with a copy of a petition to the court of appeals for a writ of mandamus. The judge read the papers and commented:

> The papers imply that Mr. Kassner is being threatened with contempt because he is not in two courts at once.
>
> It is not Mr. Kassner who is in contempt, Mr. Wendy, it is you who are in comtempt? [*sic.*]

The court also inquired of Wendy why he was not qualified to try a case in view of his admission to the bar. Wendy replied that this was "not a civil case and not one

---

§ 3500(c) permits a defendant to request a recess after the material has been given to him.

**2.** In *In re Sutter,* 543 F.2d 1030 (2d Cir. 1976), this court upheld fines of $500 per day for refusal to start a scheduled trial. The fines were imposed pursuant to Rule 8(b) of the Individual Assignment and Calendar Rules of the United States District Court for the Eastern District of New York, a rule which now has no counterpart in the Southern District. We explicitly distinguished "the standards for an assessment of costs under Rule 8(b)" from "the standards for imposing the sanction of contempt under 18 U.S.C. § 401." *Id.* at 1035. Specifically we held that "Rule 8 cannot be read so as to require the same finding of willful

intent required by the contempt statute. Such a reading would render the rule superfluous." *Id.*

**3.** Wendy explained to Judge Goettel that Kassner's state court trial resulted in a mistrial in its early stages, thereby necessitating a fresh start three days after the trial had originally been scheduled to begin. Moreover, the state trial judge was "sitting in the calendar part" and thus was able to "devote . . . [only] three or four hours a day to [the] case."

**4.** For reasons detailed in note 2 *supra,* we note that fines could not be levied in the Southern District under the authority of the *Sutter* case.

that I feel I should cut my teeth on . . ."[5] The court then ascertained that Wendy was not prepared to proceed by giving him a choice between proceeding or "being held in contempt for being unable to proceed at this time . . . ." When Wendy again refused to try the case, the court held him "in contempt and . . . fin[ed] him an additional $500."[6] When Wendy requested the opportunity to come before the district court in the event his petition in the court of appeals was denied, the judge responded: "You then have the opportunity because you are coming back tomorrow morning, and every morning until the Court of Appeals takes some action."[7] Wendy reiterated that it was Kassner, not he, who had been retained in the case, and that Wendy's signing of the appearance was through mere inadvertence.

The pas de deux rehearsed on December 13 and 14 was played again for the third and last time on the following day, December 15. Wendy repeated that the defendant was not ready to begin the trial.[8] The court once more refused to accept Kassner's absence as Wendy's "excuse" and found appellant in contempt, fining him an additional $500. At this point the district judge said that he would not impose any more fines, see note 7 supra, because he could not commence the trial on December 16 even if Wendy and Kassner were ready.[9]

Several days after the third performance of the contempt scenario terminated, Judge Goettel referred his finding of "contempt against an attorney" to the Reassignment Committee of the Southern District for assignment to another judge.[10] In setting forth the facts, the judge stated that he considered the action taken "to have [been] a civil contempt, although an argument can be made that it was criminal and required compliance with Rule 42(b)."[11]

**5.** He amplified his statement by adding: "I wanted some practical experience of sitting with an able trial lawyer. And, your honor, it is costing me a rather large amount of money to get this further education that I feel is necessary."

**6.** By this time the court had reread the *Sutter* case and realized that the Southern District did not have a rule similar to Rule 8(b) in the Eastern District; thus it must have assumed that contempt was the only remedy available. *But cf. Galella v. Onassis*, 353 F.Supp. 196, 240 (S.D.N.Y.1972) (court finding it had power to cite attorney for contempt but preferred to refer matter to local bar association), *modified on other grounds*, 487 F.2d 986 (2d Cir. 1973), note 16 *infra*.

**7.** We "strongly disapprove[d]" of this procedure in *In re Sutter, supra*, 543 F.2d at 1033 n. 4.

**8.** The colloquy between Wendy and Judge Goettel on the third day resembled that of the two preceding days. Judge Goettel accepted Wendy's "representation that [he] created this problem out of sheer ignorance." Wendy justified his refusal to proceed on the basis that "the man's freedom is at stake here and I have never assisted anyone in a criminal trial nor participated in a criminal trial and I felt I would like this opportunity to do that a few times and then go out and try it on my own." He added that "in contempt, I always thought it was the intent of the party, and that is what I tried to impress upon the Court, that there is no intent here to be contemptuous of the Court or its rulings." To this Judge Goettel rejoined, "You are certainly intentional in your refusal to go ahead with the trial."

**9.** The criminal case itself was adjourned and subsequently tried by Kassner. The defendant Harris was acquitted.

**10.** Reference to another judge is in accord with our suggestion in *In re Sutter, supra*, 543 F.2d at 1033–34 n. 4, that costs imposed pursuant to Eastern District Rule 8 are best determined by another judge. Avoiding the appearance of personal animosity, which militates in favor of such Rule 8 references, is equally operative in the contempt context.

**11.** Judge Griesa, to whom the matter was assigned, *see* note 10 *supra*, viewed the matter "as a civil contempt proceeding or civil contempt proceedings, plural . . . ." At the hearing before Judge Griesa, Wendy again argued that "there was no intent to disobey the Court's orders," because he "never intended to be the attorney of record"; rather he had written his name on the notice of appearance out of "ignorance or stupidity." Judge Griesa, however, considered that he had "no rational reason to second guess Judge Goettel on this," that the matter went "to the authority of the Court to try to keep some order in its business" and that it "wasn't a matter of anger or passion or arbitrariness . . . ." He accordingly confirmed the total fine of $1,500.

What we are dealing with, then, are in effect three citations of civil contempt against an attorney for his refusal to proceed to trial[12] in a felony case on the basis that the intended trial counsel was otherwise engaged, that he himself was insufficiently experienced to try the case, and that entry of his own name on the notice of appearance had been inadvertent. We are *not* dealing with a criminal contempt,[13] there being no alleged violation of 18 U.S.C. § 401;[14] nor do we have a governing local rule such as was involved in *In re Sutter, supra;*[15] and the fines were not imposed under 28 U.S.C. § 1927. *Ali v. A. & G. Co.,* 542 F.2d 595, 597 (2d Cir. 1976) (Oakes, J.,

12. Federal courts have "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). *See United States v. Mitchell,* 556 F.2d 371, 384 (6th Cir. 1977); *In re Long Visitor,* 523 F.2d 443, 448 (8th Cir. 1975); *cf. In re Investigation Before April 1975 Grand Jury,* 531 F.2d 600, 608 & n. 13 (D.C. Cir. 1976) (28 U.S.C. § 1826 "intended . . . to *codify existing civil contempt procedures for recalcitrant witnesses* in court and grand jury proceedings); *Palmer v. United States,* 530 F.2d 787, 788 (8th Cir. 1976) (same); note 14 *infra* (18 U.S.C. § 401 source of criminal contempt power). *See generally* Sedler, *The Summary Contempt Power and the Constitution: The View from Without and Within,* 51 N.Y.U. L.Rev. 34, 36 (1976).

13. Arguably, appellant was really cited for criminal contempt. The traditional distinction between civil and criminal contempt has been the difference between refusing to do what has been ordered (civil) and *doing what has been* prohibited (criminal). *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 449, 31 S.Ct. 492, 55 L.Ed. 797 (1911). A civil contempt judgment is conditional on obedience to the order, *Shillitani v. United States, supra,* 384 U.S. at 386, 86 S.Ct. 1531, prospective in operation, *id.* at 370–71, 86 S.Ct. 1531, and often for the benefit of the other party to the litigation, 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2960, at 584 (1973). By contrast, a criminal contempt judgment is unconditional, *see id.* § 704, at 159–61, retrospective in effect, *id.* § 702, at 148, and in vindication of the state's authority, *id. See* Note, *Procedures for Trying Contempts in the Federal Courts,* 73 Harv.L. Rev. 353, 353–60 (1959).

While the occurrences here at issue may partake of the nature of both civil and criminal contempt, *see United States v. UMW,* 330 U.S. 258, 298–99, 67 S.Ct. 677, 91 L.Ed. 884 (1947), we believe that civil contempt characteristics predominate. Judge Goettel's citations were directed at coercing Wendy's compliance. *See Shillitani v. United States, supra,* 384 U.S. at 370, 86 S.Ct. 1531; *Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336, 1344–45 (3d Cir. 1976); *Douglas v. First National Realty Corp.,* 177 U.S.App.D.C. 409, 413, 543 F.2d 894, 898 (1976). If Wendy had tried the case, the fines would not have been levied; they were not unconditional punishments for wrongs committed.

Lending weight to the civil nature of the contempts was Judge Goettel's imposition of fines severally and his cessation of the fine accumulation after December 15 since his calendar prevented him from immediately rescheduling the trial. Thus the prospective opportunity for Wendy to purge his contempt was thereafter lacking. *See Shillitani v. United States, supra,* 384 U.S. at 371, 86 S.Ct. 1531.

The civil nature of the contempt is not turned criminal by the court's efforts at vindicating its authority, an interest which may be implicated in either civil or criminal proceedings. Thus, we are giving principal weight to the punitive-remedial dichotomy. *See* Moskovitz, *Contempt of Injunctions, Civil and Criminal,* 43 Colum.L.Rev. 780, 785–86 (1943).

Finally, while we are satisfied that the contempts here were civil in nature, the presumption in favor of finding civil as opposed to criminal contempt where there is some doubt as to the nature of the contempt, 3 C. Wright, *supra,* § 704, at 158, militates in favor of concluding that the citations of Mr. Wendy were for civil contempt.

14. 18 U.S.C. § 401 is the exclusive authority for federal courts to punish the type of criminal contempt which arguably occurred here. *See* note 13 *supra.* It provides:

§ 401. Power of court

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

*But see Cammer v. United States,* 350 U.S. 399, 76 S.Ct. 456, 100 L.Ed. 474 (1956) (lawyer not the kind of "officer" who can be tried summarily for contempt under 18 U.S.C. § 401(2)).

15. Calendar Rule 16(c) of the Southern District of New York, which was quite similar to Rule 8(b), *see Barbin v. Mondon,* 298 F.2d 235 (2d Cir. 1961), was for reasons unbeknownst to us repealed on May 18, 1972.

dissenting); *see Bardin v. Mondon,* 298 F.2d 235, 238 (2d Cir. 1961).[16]

■ Contempt by an attorney is always a serious matter. While a simple rebuke or more serious censure by the court might not have the same effect as in the more tightly-knit Bar of England,[17] the more serious exercise of the contempt power is awesome in its implications. A citation is likely to afflict the contemnor with a "stigma of antisocial conduct." Note, *Procedures for Trying Contempts in the Federal Courts,* 73 Harv.L.Rev. 353, 355 (1959). For a lawyer seeking admission to other bars or to practice before federal agencies, a citation might have considerable economic consequences. The appellation of "civil" rather than "criminal" contempt hardly alleviates the harm. Thus, it behooves the court, in the first instance or on appeal, to make certain that an order of the court is violated before a citation issues.

■ We fail to find such an order on December 13, 1976. True, the trial was scheduled for that day, but the court might well have granted the continuance sought by Kassner and Wendy. The judge on that day erroneously thought that he was proceeding on the authority of the *Sutter* case. *Ante* at 1027–1028. He also first spoke of a $500 a day "fine against Mr. Kassner," before he stated to Wendy that it would be assessed against him personally as attorney of record. But the December 13 transcript does not reveal an order to Wendy either to

proceed to trial that day or to be held in contempt. Accordingly, the judgment as to December 13 must be reversed.

The following two days rest on a different footing. On December 13 the court told appellant to return the next morning at which time "[w]e will go through the same procedure again. . . . [A]nd I *intend* to find you in contempt and assess fines against you of $500 for each day you are unprepared to proceed." (Emphasis added.) Assuming that this statement was an implicit *order* to proceed, we conclude that a civil contempt citation for Wendy's election not to proceed was inappropriate.

■ A long recognized defense to a civil contempt citation is the cited individual's inability to comply with the court's order. *See Shillitani v. United States,* 384 U.S. 364, 371, 86 S.Ct. 1531 (1966); 3 C. Wright, *Federal Practice and Procedure* § 704, at 160 & n. 63 (1969). Technically speaking, Wendy may have had the ability to comply with the court's order in that, as a member of the bar, he was legally authorized to try cases.[18] But realistically, Wendy was incapable of compliance. 'It is uncontroverted that at the time of the contempt citations, Wendy's expertise was in the area of tax and accounting. He had never before tried a case, civil or criminal, state or federal. He was hardly qualified, therefore, to try a felony tax carrying a potential five-year prison term. The client, whose liberty was at stake,[19] certainly did

**16.** We do not intimate what result might have obtained if the firm of Kassner & Detsky had been ordered to pay a fine under 28 U.S.C. § 1927. That section provides that an "attorney . . . who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required . . . to satisfy personally such excess costs." *See* Note, *Sanctions Imposed by Courts on Attorneys Who Abuse the Judicial Process,* 44 U.Chi. L.Rev. 619, 623–29 (1977).

**17.** Even Sir Edward Marshall Hall for all his tilting with trial judges never drew a contempt citation even though his rebuke by the Court of Appeal very nearly put him into bankruptcy. *See* E. Marjoribanks, *For the Defense: The Life of Sir Edward Marshall Hall* 176 (1954).

**18.** Admission to the bar of the Southern District does not in and of itself mean that one is competent to try all kinds of cases that are heard in the District.

**19.** It would have been cold comfort indeed for the client, Harris, if Wendy's lack of skill had resulted in a conviction and Harris were limited on appeal to a claim of ineffective assistance of counsel. Given the "farce and mockery" standard of competence which, although abandoned in several other circuits, still prevails in this one, *United States v. Wight,* 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied,* 338 U.S. 950 (1950); *see LiPuma v. Commissioner,* 560 F.2d 84, 90–91 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977), it is questionable whether even Wendy's acknowledged lack of trial experience and competence would

not want Wendy to try the case.[20] To be ordered either to try a case which he was obviously unqualified to do [21] or to be held in contempt was thus a Hobson's choice.[22] That is to say, Wendy did not, in the old phrase, "carry the keys of [his] prison." *See In re Nevitt,* 117 F. 448, 461 (8th Cir. 1902); 3 C. Wright, *supra,* § 704, at 160 & n. 60. He could not be held in contempt because he did not have the present ability to comply with the court's order in any meaningful sense.[23]

We do not underestimate the important duties of counsel to the court, especially since the Speedy Trial Act has made calendar control even more difficult than it was previously. We agree entirely with the district court that Wendy neglected his duty timely to inform the court that Kassner was to be trial counsel. We do not condone his conduct in this regard and, as we have said, do not reach the question whether he could have been fined if the Southern District had in effect a rule like the Eastern District's Rule 8(b) discussed in *Sutter.* We hold only that a contempt citation was improper under the circumstances here.

Judgment reversed.

have attained the depths necessary to permit reversal of the conviction. *But see Rickenbacker v. Warden,* 550 F.2d 62, 67 (2d Cir. 1976) (Oakes, J., dissenting), *cert. denied,* 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977).

20. The record indicates that the defendant Harris had retained Kassner, not Wendy. Harris also specifically stated that he was not willing to proceed with Wendy as trial counsel.

21. Wendy's inexperience *distinguishes this* case from *United States v. Lespier,* 558 F.2d 624, 628 (1st Cir. 1977), where the trial court found that counsel, who refused to proceed in the absence of co-counsel, "had the competence and experience to perform effectively," but nevertheless refused to go forward.

22. Wendy's situation was perhaps even more complicated than the simple dilemma between risking Harris's freedom and suffering a contempt citation. Conceivably, trying a case which he knew he was unqualified to do might have resulted in disciplinary proceedings. Canon 6 of the ABA's Code of Professional Responsibility requires a lawyer to "represent a client

competently." Disciplinary Rule 6–101(A)(1) admonishes a lawyer not to "[h]andle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it."

23. Without unduly speculating on what the result might have been if Kassner himself had been ordered to proceed, we note that his situation is distinguishable from that of Sutter. *In re Sutter, supra.* Kassner's state court commitment, unlike Sutter's, was undertaken long before the federal court trial was scheduled. Moreover, Sutter was never found in contempt; he was in violation of Eastern District Rule 8. Since Kassner's *state court trial was proceeding incredibly at the glacial rate of three hours per day in a matter that had been pending for years, see* note 3, *supra,* it might have been wise for the district judge to communicate with the state court judge to elicit some cooperation. Certainly Kassner should have been ordered in to explain the matter from the firm's point of view.