In re Bernard Alan **CRUM**, Debtor.

Steven R. **POWERS**, Plaintiff,

v.

Bernard Alan **CRUM**, et al., Defendants.

John W. **PEDERSON**, Plaintiff,

v.

Bernard Alan **CRUM**, et al., Defendants.

Bankruptcy No. 82–B–00322.

Adv. Nos. 84–A–2153, 84–A–2138.

United States Bankruptcy Court, N.D. Illinois, W.D.

April 2, 1985.

Chester R. Chostner, Rockford, Ill., for plaintiff in No. 84–A–2153.

Daniel A. Cwynar, Loves Park, Ill., for plaintiff in No. 84–A–2138.

David R. Babb, Belvidere, Ill., for defendants.

MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court in the consolidation of two adversary proceedings. The Plaintiffs filed identical Complaints to Determine Dischargeability of a Debt under Section 523(a)(3). Subsequent-

ly, the Plaintiffs filed identical Motions for Summary Judgment. Plaintiff, Steven R. Powers, is represented by Attorney Chester R. Chostner. Plaintiff, John W. Pederson, is represented by Attorney Daniel A. Cwynar. The debtor, Bernard Alan Crum, is represented by Attorney David R. Babb.

The chronology of this case is as follows: The debtor, with his wife, filed a joint Chapter 7 bankruptcy petition on April 12, 1982. A notice went out to creditors on May 5, 1982, which stated that the case appeared to be a no-asset case and that it was, therefore, unnecessary for the creditors to file a proof of claim. The notice also indicated that if assets were discovered and it appeared that a dividend would be paid, creditors would be notified and given an opportunity to file their claims. The debtors received their discharge on June 25, 1982. As no assets were discovered, no specific date was ever set by which creditors had to file proofs of claim.

The Plaintiffs were creditors of the debtor at the time he filed for bankruptcy in 1982. The bankruptcy petition failed to list either Plaintiff as a creditor, and, consequently, neither received notice of the meeting of creditors or any other formal notice of the pendency of the bankruptcy prior to the closing of the case. It appears from the pleadings that in response to certain collection efforts by one or both of the Plaintiffs, the debtor notified the Plaintiffs of his discharge in bankruptcy sometime in January of 1983.

In August of 1984, the debtor petitioned this Court to reopen his bankruptcy case and said petition was granted. The debtor subsequently amended his schedules to include the creditors/Plaintiffs. The Plaintiffs then filed their Complaints under Section 523(a)(3) and their Motions for Summary Judgment.

The issue in these adversary proceedings is whether, in a no-asset bankruptcy case, a creditor may have a debt held nondischargeable under Section 523(a)(3) because the debtor failed to list the creditor and the creditor did not learn of the debtor's discharge until several months after it had been entered.

Section 523(a)(3) provides:

(a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

There has been no claim that the debt is of a kind specified in paragraph (2), (4) or (6) of Section 523(a), therefore it is Subsection (a)(3)(A), not Subsection (a)(3)(B) which is asserted by the creditors in these adversary proceedings.

The Court will first review several bankruptcy cases which have dealt with the application and interpretation of Section 523(a)(3). The cases deal with the issue at two different levels, either at a hearing on the debtors' motion to reopen the bankruptcy case in order to add previously unlisted creditors or, following reopening and amendment by the debtor, on the creditor's complaint to determine dischargeability under Section 523(a)(3).

The first case worthy of discussion is *Matter of Swain*, 21 B.R. 594 (Bkrtcy. Conn.1982). In the *Swain* case, the debtor, after discharge, applied to reopen the case and amend her schedules to list three creditors previously omitted. The court, in an oral ruling, denied the motion to reopen,

adverting to the holding in *Milando v. Perrone,* 157 F.2d 1002 (2nd Cir.1946) that cases cannot be reopened in order to list inadvertently omitted creditors.

The District Court in upholding the Bankruptcy Judge's ruling stated as follows:

"I believe that the rule set forth in *Milando* remains valid law in the Second Circuit and is binding upon me. In *Milando,* a debtor applied to reopen his closed nonasset case for the purpose of scheduling and discharging a claim inadvertently omitted from the original schedule. The Court of Appeals reversed the lower courts' granting of the debtor's application, holding that since the reopening and amendment would be useless to effect a discharge of the debt of the omitted creditor, the reopening of the case should not be allowed. At that time, Section 17(a)(3) of the Bankruptcy Act of 1898 provided that a discharge should not release a bankrupt from a debt which is not scheduled in time to be proved and allowed in the bankruptcy proceeding unless the creditor had notice or actual knowledge of the proceeding. The Court of Appeals first noted that the 'courts have no power to disregard this clear language.' 157 F.2d at 1003. It then reasoned that '[i]t is only just that he who seeks the protection of a statutory bar against payment of his debts be required to bring himself within the provisions of the statutory grant.' Id. at 1004. The court also concluded that whether an estate has assets or not is irrelevant." 21 B.R. at 595–596

The court in *Swain* went on to consider whether the language of Section 523(a)(3), the counterpart of Section 17(a)(3), changes the analysis. Referring to the legislative history as "murky", the court noted that the floor statements in the House and Senate indicate that Section 523(a)(3) "is intended to overrule *Birkett v. Columbia Bank,* 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904)", a decision cited by the *Milando* court. However, the legislative history also states, "unscheduled debts are excepted from discharge under [Section 523(a)(3)]. The provision, derived from Section 17(a)(3) follows current law, but clarifies some uncertainties generated by case law construing 17(a)(3). The debt is excepted from discharge if it was not scheduled in time to allow timely action by the creditor to protect his rights, unless the creditor had notice or actual knowledge of the case." H.Rep. 595, 95th Cong. 1st Sess. 364 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5963, 6320.

The District Court ultimately concluded that there was no indication that the changes in language between Section 17(a)(3) and Section 523(a)(3) were meant to overrule the holding of *Milando.*

In contrast to *Swain* is *Matter of Stark,* 717 F.2d 322 (7th Cir.1983). Again, the debtor sought to reopen his bankruptcy case for the purpose of listing additional creditors. The bankruptcy court denied the motion, the District Court reversed and the creditor appealed. The Seventh Circuit Court of Appeals held that the case should be reopened to add the additional creditors. The ultimate issue of non-dischargeability under Section 523(a)(3)(A) was not decided, but much of the reasoning and rationale of the court is instructive when reviewing the issues raised under Section 523(a)(3)(A).

Contrary to the *Swain* court, the Seventh Circuit determined that in a no-asset bankruptcy, where notice had been given pursuant to Rule 203(b), a debtor may reopen the estate to add an omitted creditor where there is no evidence of fraud or intentional design. The court noted that the newly added creditor had not been denied a right to file a proof of claim because it was a no-asset case, and if assets were found and a payment of a dividend appeared possible, the creditors (including the newly listed creditors) would be notified and granted a reasonable time to file their claims.

In the last paragraph of the opinion, the court stated in dicta, "[w]e conclude that the Bankruptcy Code makes clear that the right of the creditor that is protected by

Section 523(a)(3) is the right to timely file a proof of claim." 717 F.2d at 324.

In *Matter of Zablocki*, 36 B.R. 779 (Bkrtcy.Conn.1984) the judge who rendered the decision in the *Swain* case had the opportunity to review his rationale in *Swain* in light of the *Stark* case. The court noted that in *Swain* no consideration was given to the significance of the court's not setting a claims bar date. The court concluded that the Rule changes relative to no-asset cases indicate that when a no-asset notice has been sent to creditors and no subsequent dividend notice has been sent, a creditor scheduled incident to a reopening has not lost his opportunity to file a proof of claim and share in subsequent distribution with those creditors who were initially scheduled.

As the judge in *Zablocki* stated: "I am aware that a reopening and related scheduling will not restore a creditor to all the rights it would have had had the creditor been scheduled initially, e.g., the right to object to the debtor's discharge. It also means that no-asset cases with no claims bar date may be subject to endless motions to reopen. However, Section 523(a)(3) evinces a legislative determination that only two creditor's rights, to participate in a dividend and to obtain a determination of dischargeability [under Section 523(a)(2)(4) and (6) ], are of such paramount importance [that it is only their loss that mandates an exception of a late-scheduled debt from discharge]. 3 Collier on Bankruptcy, Par. 523.13[5] at 523–82 (15th ed. 1983)." 36 B.R. at 782.

The creditors here place heavy reliance on *In re Gilbert*, 38 B.R. 948 (Bkrtcy.Ohio 1984). In *Gilbert* the court was presented with the same situation as this Court. The schedules had been amended and the creditor then filed a Section 523(a)(3) complaint and a Motion for Summary Judgment.

The *Gilbert* court, by way of reasoning, stated, "[a] review of the record reveals that the Plaintiff was not listed as a creditor on the Debtor's original Petition. This omission results in the satisfaction of the first element of nondischargeability under

11 U.S.C. Section 523(a)(3). The succeeding question is whether or not the Plaintiff had notice or knowledge of the Debtor's Petition in time to file a claim against the estate." 38 B.R. at 950.

The court also rejected the debtor's contention that because it had been a no-asset case and no claims bar date had even been set the omitted creditor's rights had not been prejudiced. The court noted the expense incurred by the creditor in pursuing his debt in state court. (It appears from the facts, however, that the creditor proceeded with his state court action *after* receiving notice of the debtor's discharge.) The court, although not expressly stating such, appears to reject the *Stark* interpretation that Section 523(a)(3)(A) only protects a creditor's right to file a timely proof of claim.

The *Gilbert* court also, in a very brief statement, finds the *Stark* case distinguishable, based apparently on the business savvy of the debtor and the consequences and responsibilities which the debtor was or should have been aware of attendant to the execution of a note on behalf of a corporation.

Another case worthy of discussion is *In re Laczko*, 37 B.R. 676 (Bkrtcy.App.Ariz. 1984). The Laczkos filed a Chapter 7 case on February 12, 1980. The court gave notice of the Section 341 meeting set for March 17. That notice also fixed six months from March 17 as the last date to file claims. The debtors received their discharge on June 26, 1980. On February 8, 1982, and apparently prior to the date the case was closed, the Laczkos filed a petition to amend their schedule of unsecured creditors to include a pre-petition creditor previously not listed. The creditor filed a Section 523(a)(3) complaint and Motion for Summary Judgment. The court granted the creditor's motion.

The *Laczko* case has one potentially distinguishable feature: Although a no-asset case, a date by which proofs of claim had to be filed had been set. The court in addressing this point stated: "[t]he case of *In re Stark*, 717 F.2d 322 (7th Cir.1983),

decided under the new Code, at first blush seems to favor [the debtors], but can be distinguished. In *Stark*, the bankruptcy court, under Bankruptcy Rule 203(b), notified creditors that there were no assets and that no claims need be filed unless and until further notice of the opportunity to file claims be given to creditors. *Because the date to file claims was never set, Section 523(a)(3) was never triggered.*" 37 B.R. at 679 (Emphasis Added).

One final case which appears on point with the instant facts is In re *Rayson*, 39 B.R. 597 (Bkrtcy.Cal.1984). The *Rayson* case involved the same basic fact pattern. The debtor moved the bankruptcy court to reopen his bankruptcy case and also filed an application to remove a pending state court action to the bankruptcy court. The estate was reopened to allow the debtor to amend his schedules to ·include the previously omitted creditor, and a trial was held to determine whether the debt was non-dischargeable under Section 523(a)(3).

The judge, basing his conclusion on an analysis of *Laczko* and *Stark*, stated: "I am persuaded that [the debtor's] liability to [the creditor] is dischargeable because Section 523(a)(3) was not triggered. In order for a debt to be non-dischargeable, Section 523(a)(3) requires that the debtor fail to list the creditor 'in time to permit ... timely filing of a proof of claim ...' since no time limit to file claims was ever set in this case [the creditor] has not been precluded from filing a timely proof of claim." 39 B.R. at 598

With this background, the Court will proceed to its findings and conclusions in the present controversy. As shown by the preceding case law review, most of the recent cases interpreting Section 523(a)(3)(A) take the position that when dealing with a no-asset case, and when a no-asset notice has been sent out and no claims bar date has been set, Section 523(a)(3)(A) has not been "triggered". The unlisted creditor has not been prejudiced in such a way as to fall within the application of Section 523(a)(3)(A) because the creditor has been

listed (albeit late) "in time to permit ... timely filing of a proof of claim...."

This Court is aware, as was stated by the court in *Zablocki*, that reopening and related scheduling will not restore a creditor to all the rights it would have had had the creditor been scheduled initially. These lost creditor rights include the right to file a Section 727 Objection to Discharge; the right to participate in the election of a trustee; the right to question the debtor at the Section 341 meeting; and the right generally to participate in the administration of the bankruptcy estate. Obviously these rights represent fundamental rights which the Bankruptcy Code intended to provide the creditor as he goes through the trauma of having the debtor have his debts discharged in bankruptcy. And, as cited previously, although the legislative history is "murky", it does indicate that Section 523(a)(3) was intended to except a debt from discharge "if it was not scheduled in time to allow timely action by the creditor to. *protect his rights.*" H.Rep. 595, 95th Cong. 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6320. (Emphasis Added)

It is noteworthy that the *Stark* court held that the right of the creditor that is protected by Section 523(a)(3) is the *singular* right to timely file a proof of claim. Other courts might be more amenable to a less narrow holding. Perhaps the right to timely file a proof of claim should be only one of the rights protected by Section 523(a)(3), or more specifically Section 523(a)(3)(A). Subsequent cases may expand the concept.

It would not, for instance, seem unduly harsh in dealing with the rights and duties of debtors to impose on the debtor a rule which results in the nondischargeability of the omitted creditor's debt unless the debtor can meet certain burdens, such as proof that the omission was unintentional, inadvertent or innocent; and that the omission did not harm the creditor in ways not limited to the right to file a proof of claim in an asset case. The admonition of the court in *Milando* is worth repeating because it pro-

vides a sound philosophical basis for approaching the problem: "It is only just that he who seeks the protection of a statutory bar against payment of his debts be required to bring himself within the provisions of the statutory grant."

There are those who would argue that the result of a non-dischargeability case under Section 523(a)(3) should not be keyed to so fortuitous and often meaningless an event as the mailing of an asset notice by the Clerk's office, but rather to the performance by the debtor of his statutory duties.

At the very least, it would seem that the legal burden should be on the "wrongdoer", the omitting debtor, rather than on the innocent party, the omitted creditor. Under *Stark* the burden apparently is on the omitted creditor to prove fraud or intentional design. The debtors in *Stark* were innocent and the result is not, therefore, repugnant. But less conscientious debtors, with any number of motives to omit creditors, exist. For them, *Stark* is a temptation for abuse which can only be overcome by a heavy burden on the innocent creditor. Efforts to distinguish *Stark* by the *Gilbert* and *Laczko* courts demonstrate a judicial attitude to deal with debtors less generously in these circumstances than did the Seventh Circuit in *Stark*.

The creditors in this case ask that this Court disregard the liberal interpretation of Section 523(a)(3)(A) evinced by the *Stark* case and the weight of recent authority and follow the lone holdout in recent case law which supports the strict application of Section 523(a)(3)(A), i.e., *In re Gilbert*, supra.

Nevertheless, this Court is compelled to find that Section 523(a)(3) specifically designates only two creditor's rights which are of such paramount importance that their loss mandates exception of a late scheduled debt from discharge. Those two rights are the right under Section 523(a)(3)(A) to timely file a proof of claim so as to allow participation if a dividend is issued (*In re Stark*); and the right under Section 523(a)(3)(B) to obtain a determination of dischargeability under Section 523(a)(2), (4), and (6).

The lost right to file a Section 727 Objection to Discharge will not result in non-dischargeability under Section 523(a)(3). Even the right to file a Section 727(e) Revocation of Discharge may be lost if the statutory time limits have expired. If they have not expired, it is conceivable that the omitted creditor could ask the court to revoke the debtor's discharge for the alleged fraudulent omission of the creditor from the debtor's schedules.

Another sanction, but one of little or no benefit to the omitted creditor, might be criminal proceedings against the debtor for filing a false oath.

\*    \*    \*    \*    \*    \*

## CONCLUSION

Based on the analysis and rationale outlined previously, the Court concludes that it should not follow, as a matter of law, the *Gilbert* case; and that the Motions for Summary Judgment should be denied.

The adversary proceedings will be set for trial. The following issues, and perhaps others, will be addressed:

1. Was there fraud or intentional design by the debtor?

2. Did the creditors have timely knowledge of the bankruptcy?

3. If so, does timely knowledge of the bankruptcy erase the availability of sanctions for fraudulent or intentional design?

Orders denying the Motions for Summary Judgment are entered herewith.