In re Charles JOHNSON and wife, Nancy Johnson, Debtors.

Stephen LANDERS, Plaintiff,

v.

Charles JOHNSON and wife, Nancy Johnson, Defendants.

Bankruptcy No. 84–04277–H1–4.
Adv. No. 85–0357–H1.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

July 7, 1986.

Ann Dickerson, Keavin D. McDonald, Bonham, Carrington & Fox, Houston, Tex., for plaintiff, Stephen Landers.

Michael B. Hughes, McLeod, Alexander, Powell & Apffel, Galveston, Tex., for defendants, Charles Johnson and wife, Nancy Johnson.

### MEMORANDUM OPINION

EDWARD J. RYAN, Bankruptcy Judge.

In his Complaint Under U.S.C. § 523(a)(3), Stephen Landers shows in pertinent part:

"2. Plaintiff is an individual judgment creditor of Defendants by virtue of a final judgment dated March 27, 1984. A true and correct copy of the judgment is attached hereto as Exhibit "A" and by this reference incorporated herein verbatim.

3. Defendants filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on August 14, 1984.

4. Defendants have been discharged herein pursuant to 11 U.S.C. 727. A true and correct copy of the discharge order dated January 23, 1985, is attached hereto as Exhibit "B" and by this reference incorporated herein verbatim.

5. This is an adversary proceeding to determine the dischargeability of a debt.

6. At the time the Defendants initiated this Chapter 7 proceeding, Defendant Charles Johnson was indebted to Plaintiff in the amount of $113,587.84, together with pre-judgment interest in the amount of $14,175.36, plus $1,400.00 for reasonable fees incurred in the accounting, together with the sum of $20,-000.00 for reasonable and necessary attorneys' fees. In addition, Defendant Charles Johnson is liable for post-judgment interest at the rate of ten percent (10%) per annum.

7. Defendants failed to properly include Plaintiff as a creditor in their schedules so as to provide Plaintiff with notice of the bankruptcy proceeding. A true and correct copy of the Debtor's Schedule A–3 is attached hereto as Exhibit "C" and by this reference incorporated herein verbatim.

8. The last day on which Plaintiff could file a Proof of Claim has expired, and prior to such date, Plaintiff had no notice or actual knowledge of this Chapter 7 proceeding.

9. Not only did Defendants fail to list Plaintiff's proper mailing address on Schedule A–3, they did not even submit a mailing card to the Court with Plaintiff's mailing address so as to afford Plaintiff notice of this Chapter 7 proceeding.

10. The above referenced debt which Defendant Charles Johnson owes to Plaintiff is thereby non-dischargeable by virtue of 11 U.S.C. 523(a)(3)."

The Complaint dated April 8, 1985, was also filed on that day.

In their "Answer To Complaint Under 11 U.S.C. § 523(a)(3)" dated May 6, 1985 and filed on May 7, 1985, the defendants admit most of the essential allegations of the complaint, denying paragraphs 7 and 9 of the Complaint and urging as an Affirmative Defense the order of discharge which was entered on January 23, 1985.

The matter came on for trial on June 23, 1986, and was concluded on that day.

As above-mentioned, the debtors [1] do not dispute the essentials of the complaint. Specifically the debtors concede that a mailing card was not submitted to the court. The debtors state that the nonsubmission of the mailing card was inadvertent. It was the plaintiff's debt that compelled the debtors to file for bankruptcy to file for relief under the Bankruptcy Code. Their desire to obtain a discharge from plaintiffs' debt was the reason they did file for relief.

By way of exculpation

"Debtors submit the LANDERS' debt is properly listed and the discharge is valid. Debtors submit that the claim of plaintiff is one that would normally be dischargeable in bankruptcy, and the court should now sustain the order of discharge originally granted in 1985.

As an alternative, plaintiff submits that the court could extend the time for filing objections to discharge to give plaintiff adequate time to file an objection to the discharge of defendants. If plaintiff is of the opinion that his debt is not dischargeable, this would grant him an opportunity to make such an objection." Defendant's [sic] Trial Statement, pp. 2, 3.

At the hearing held on June 23, 1986, Stephen Landers testified that he first learned of the bankruptcy of the Johnsons by telephone call from his attorney in the state court action, Patrick Dyer.

Mr. Dyer, when called as a witness, testified that he had represented the plaintiff, Stephen Landers, in the state court action. The Johnsons were represented in the state court action by the same firm of attorneys who now represent the debtors in these

---

1. The judgment is against Charles Johnson alone. The parties seem to treat it as a joint obligation for purposes of this litigation and the court will do likewise at this time.

debtor proceedings. Those attorneys represented the Johnsons when the debtor proceedings were commenced on August 13, 1984.

In the District Court of Galveston County, Texas, 122nd Judicial District, partial summary judgment had been entered on March 30, 1983; final summary judgment was entered on March 27, 1984.

By letter dated February 6, 1985, Mr. Dyer sent to the Clerk of the District Court for filing Plaintiff's Application for Post Judgment Turnover Order, and Notice of Hearing and Order relative to same. In that letter he confirmed the setting of the matter for hearing on February 25, 1985, at 4:00 o'clock p.m. A copy of that letter was sent to the debtor, Charles Johnson, and to the debtors' attorneys.

It was not until mid February, 1985, that Stephen Landers was first informed through his attorney, Mr. Dyer, of the debtor proceedings which had been pending since August of the prior year. Mr. Dyer first learned of the pending bankruptcy when he received a letter dated February 14, 1985 (Plaintiff's Exhibit 4) from the attorneys for the debtors.

Mr. Johnson, when called as a witness, testified in substance that in the interview with his attorneys preliminary to filing the debtor petition, he was asked to submit a schedule of his debts. He testified that he did not have the address of the plaintiff, Stephen Lander. He testified that he told the attorney who was interviewing him that he would telephone the address to the office of his attorneys when he ascertained that address. He further testified that he did, in fact, make a telephone call to his attorney's office giving them the address of the plaintiff, Stephen Landers. Curiously, the record is barren of any other evidence with respect to the omission of the address of Stephen Landers in the bankruptcy proceedings. There is no explanation why the debtors neglected to inform Stephen Landers of the pendency of the proceedings in the Bankruptcy Court until mid February, 1985.

Creditors who did receive notice of the meeting of creditors were informed inter alia that the meeting pursuant to 11 U.S.C. § 341(a) was scheduled for November 5, 1984, and that January 3, 1985 was fixed as the last day for the filing of objections to the discharge of the debtor, and that the same date was fixed for the last day for the filing of a complaint to determine the dischargeability of a debt. The recipients of the notice were also informed that this was a "no asset" case, and that creditors need not at that time file a claim.

■ Whether an estate has assets or not is irrelevant.[2]

■ The grant or denial of the relief sought in this case rests in the sound discretion of the court.[3] In the exercise of that discretion the court, in construing and applying the statute, must balance the interests of both the plaintiff and the defendants in the light of congressional intent. In a word, it must "balance the equities". This is more easily stated than accomplished.

■ The statute does seem to dictate that the plaintiff be granted the relief sought. Yet, as has been said, we do not read a statute with the ease of a computer; the interpretation of law is not a matter of matching color cards.

As Judge Learned Hand said in *Giuseppi v. Walling* [4]:

... "There is no surer way to misread any document than to read it literally; in every interpretation we must pass between Scylla and Charybdis; and I certainly do not wish to add to the barrels of ink that have been spent in logging the route."

2. *In re Swain,* 21 B.R. 594, 596 (D.Conn.1982).

3. *Robinson v. Mann,* 339 F.2d 547 (5th Cir. 1964), *In re Mitchell,* 47 B.R. 209 (N.D.Texas 1985).

4. 144 F.2d 608, 624, (2d Cir.1944).

The plaintiff creditor seeks to have the obligation to him declared to be nondischargeable. The debtors, of course, to achieve the "fresh start" that the Bankruptcy Code promises, desire to have the debt declared to be discharged.

The congressional intent has been described as "murky".[5]

The court may not abuse the discretion entrusted to it.[6]

The Sixth Circuit has held:

"Under the Code, only the creditors' rights to participate in a dividend and to obtain a determination of dischargeability are of such importance that their lost [sic] mandates exception of a late scheduled debt from discharge."[7]

We disagree as we must.[8]

It is not clear whether this Circuit has opted for the somewhat Draconian, pungent, conclusive and easy-to-apply rule of *Milando v. Peronne*.[9]

The Ninth Circuit Appellate Panel observed:[10]

"At 3 Collier on Bankruptcy (15th Ed.) 533–81, the editors state that § 523(a)(3) clarifies certain uncertainties generated by case law decided under § 17(a)(3) of the former Act. Unfortunately, Congress did not specifically overrule the exceptional circumstances rule of *Robinson v. Mann, supra.*

However, we agree with the Second Circuit in *Milando v. Peronne, supra*, at Page 1003:

This section [§ 17(a)(3)] provides that a discharge shall not release a bankrupt from a debt which he has not scheduled in time for it to be proved and allowed in the bankruptcy proceedings unless the creditor has notice or actual knowledge of the proceedings. The courts have no power to disregard this clear language."

*Matter of Adams, supra*, might be read as requiring a literal reading of the statute. However, the case dealt with legal issues focusing on the validity vel non of rules. The "liberal rule"[11] of *Robinson v. Mann* probably remains alive and well in the Fifth Circuit.

No case has been found where amendment to permit late scheduling of an omitted debt has been allowed where the circumstances demonstrate deliberate omission or other dishonesty.

The circumstances of the omission in the instant case show a deliberate failure to schedule the movant as a creditor. If, as he testified, the debtor supplied the missing address, the record has no explanation for the filing of the defective schedule and the debtor's signing them in insufficient form. Although, it is not the duty of the court to speculate on the reason or reasons for the conduct of the parties, it may have been attorney's nonfeasance.

"However, absent a truly extraordinary situation, e.g., *United States v. Cirami*, 563 F.2d 26, 35 (2d Cir.1977), the client is not excused from the consequences of his attorney's nonfeasance. *Dominguez v. United States*, 583 F.2d

5. *In re Crum*, 48 B.R. 486 at 488, 490, *In re Swain, supra* at 596 (N.D.Ill.1985).

6. *See LeSportsac, Inc. v. K Mart Corporation*, 754 F.2d 71, 74 (2d Cir.1985):

"The term "abuse of discretion" is capable of widely varying interpretations, ranging, as Judge Friendly has recently pointed out, "from ones that would require the appellate court to come close to finding that the trial court had taken leave of its senses to others which differ from the definition of error by only the slightest nuance, with numerous variations between the extremes." *See* Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 763 (1982); *see also* Rosenberg, Judicial Discretion of the Trial Court, Viewed from Above, 22 Syracuse L.Rev. 635, 639 (1971)."

7. *In re Rosinski*, 759 F.2d 539, 542 (6th Cir. 1985), *Accord, Matter of Stark*, 717 F.2d 322 (7th Cir.1983).

8. *Matter of Adams*, 734 F.2d 1094 (5th Cir.1984); *Verison v. Housing Authority of City of Atlanta*, 337 F.2d 616 (5th Cir.1964).

9. 157 F.2d 1002 (2d Cir.1946).

10. *In re Laczko*, 37 B.R. 676, 679 (Bkrtcy.—App. 1984).

11. *In re Lazcko, supra*, at 678.

615, 618 (2d Cir.1978) (per curiam), cert. denied, 439 U.S. 1117 (1979); *Davis v. United Fruit Co.*, 402 F.2d 328, 331 (2d Cir.1968), cert. denied, 393 U.S. 1085 [89 S.Ct. 869, 21 L.Ed.2d 778] (1969). In the seminal case of *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34 [82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734] (1962), the Supreme Court clarified the client's responsibility for his counsel's conduct:

There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on his client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' *Smith v. Ayer*, [11 Otto 320, 326] 101 U.S. 320, 326 [25 L.Ed. 955] [ (1880) ]." [12]

The motion to amend is denied.

"It would not, for instance, seem unduly harsh in dealing with the rights and duties of debtors to impose on the debtor a rule which results in the nondischargeability of the omitted creditor's debt unless the debtor can meet certain burdens, such as proof that the omission was unintentional, inadvertent or innocent; and that the omission did not harm the creditor in ways not limited to the right to file a proof of claim in an asset case. The admonition of the court in *Milando* is worth repeating because it provides a sound philosophical basis for approaching the problem: 'It is only just that he who seeks the protection of a statutory bar against payment of his debts be required to bring himself within the provisions of the statutory grant.' " [13]

Let judgment enter accordingly.

**12.** *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir.1980).

**13.** *In re Crum,* 48 B.R. 486, 490, 491 (N.D.Ill. 1985).